**FORD MOTOR CREDIT COMPANY**

v.

**Sammy Lee WASHINGTON.**

**No. 12794.**

Court of Civil Appeals of Texas, Austin.

Nov. 15, 1978.

Rehearing Denied Dec. 5, 1978.

Barry K. Bishop, Roy C. Snodgrass, III, Clark, Thomas, Winters & Shapiro, Austin, for appellant.

John F. Campbell, Lawrence J. Morgan, Campbell & Davidson, Austin, for appellee.

SHANNON, Justice.

Sammy Lee Washington sued Ford Motor Credit Company and Leif Johnson Ford, Inc., for conversion of his 1972 automobile. After trial to a jury, the district court entered a joint and several judgment against the Credit Company and Leif Johnson for $1,000.00 in actual damages, and judgment against the Credit Company for $5,000.00 punitive damages. Only the Credit Company has taken an appeal from the judgment.

In April, 1974, Washington entered into a retail installment contract for the purchase of a used car from Leif Johnson. Leif Johnson assigned the contract to the Credit Company. The installment contract provided that Washington make monthly payments of $89.95 on the twentieth day of each month. Washington missed a payment in the beginning months and his account was never current thereafter except for a short time. In July, 1976, the Credit Company's agent repossessed the car. At the time of repossession, Washington was in default on the June, 1976, payment.

The case was submitted to the jury by seven special issues. The jury answered that the Credit Company waived its right to repossess the car by its actions in servicing Washington's account. The jury answered in addition that the Credit Company acted with malice in repossessing the car and assessed exemplary damages in the sum of $5,000. The market value of the car at the time of repossession was found to be $1,000.00.

Points of error one and two complain that there was no evidence, or alternatively, insufficient evidence to support the jury's answer that the Credit Company waived its right to repossess the car.

The district court defined waiver to mean an " . . . intentional relinquishment of a known right or intentional conduct inconsistent with claiming such right." The Credit Company did not object to the court's definition.

Washington missed an installment payment soon after he purchased the car. On cross-examination he admitted that thereafter he was never current in the payments except for one time. On occasion, he was behind by several payments. The evidence was that the employees of the Credit Company spent considerable time "servicing" Washington's account. Most of the time the Credit Company employees called Mrs. Washington in an effort to prompt payment of overdue installments. At times an employee of the Credit Company visited Washington or his wife to discuss with them the condition of the account and what they might do to bring the account current. Washington continued to make payments, although seldom on time and rarely in sufficient amounts to bring current the account.

In July of 1975, a Credit Company employee, Terry L. Carey, went to Washington's house and discussed the account with Washington. Washington agreed that the account was overdue, and he also agreed that Carey could repossess the car. In the meantime, Washington's wife overheard their conversation and then hastened to drive the car away and hide it so thoroughly that a joint search by Washington and Carey could not discover it. Another attempt by the Credit Company to repossess the car was thwarted by Washington's mother who blocked the car in the driveway by parking her car behind it. Carey testified that he or another employee tried to repossess the car on several later occasions. A collection agency was finally successful in

taking the car from Washington's driveway at about three o'clock in the morning of July 16, 1976. The Credit Company never refused to receive any of Washington's late payments.

█ The Credit Company's conduct in allowing Washington to fall behind in the payments without repossession and in consistently accepting late payments after ineffective attempts to repossess was sufficient to justify the jury's finding of waiver.

The Credit Company claims another reason why, as a matter of law, it did not waive the right to take the car. The Credit Company's claim rests upon the terms of the following form letter:

"Dear

Once again I am writing with regard to the payments that have not been made on your account. The past due condition of your account now is serious.

Our next step must be to repossess the vehicle. We hate to do this and we are sure you do not relish it either. Repossession will not do your credit reputation any good. If it is necessary, after we sell the car and apply the proceeds to your account, there may still be an amount owing. We will be asking you to pay any balance.

Your bringing the account current immediately will make all of this unnecessary. Please send your check for the past due payments or call me today. Repossession would be a serious and unfortunate matter for both of us.

Sincerely,

Account Representative"

The Credit Company's employee testified that the letter was mailed in May of 1976, to Washington in Bastrop. Washington's account file showed his address to be 611 Mesquite. The evidence was that in April, 1976, Washington moved to 2019 Pecan. In any event, Washington testified that he never received the letter or that he did not remember receiving it.

█ The Credit Company's position, assuming arguendo that prior to the letter of May, 1976, Washington was justified in believing that his delinquencies were to be disregarded for purposes of repossession, is that such belief could not remain justified in light of the May letter. The Credit Company relies upon the rule that a party, having once waived by its conduct strict compliance with the terms of a contract, can assert its right to strict compliance in the future by notifying the other party of its intent to do so and by allowing a reasonable time for the other party to comply. *A. L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168 S.W.2d 629 (1943).

This Court, of course, recognizes the rule in *Saide,* but finds the rule inapplicable to this appeal. The Credit Company's evidence was that it mailed the letter, but Washington's testimony was that he did not receive it. Assuming that the terms of the form letter would have put Washington on notice that the Credit Company was going to insist on strict compliance, still we cannot say, as a matter of law, that the letter was a defense to waiver in view of the conflicting testimony as to whether Washington received it.

Points of error three and four are that there was no evidence, or alternatively, insufficient evidence to support the jury's answer imputing malice to the Credit Company. We sustain point three.

█ The fact that an act is unlawful is not of itself ground for an award of exemplary damages. That act must not only be unlawful but also must be of a wanton and malicious nature, or, as sometimes stated, of a criminal or wanton nature. An act will not be deemed malicious, so as to warrant punitive damages, merely because it was unlawful or wrongful. *Ogle v. Craig,* 464 S.W.2d 95 (Tex.1971); *Dennis v. Dial Finance & Thrift Company,* 401 S.W.2d 803 (Tex.1966); *Jones v. Ross,* 141 Tex. 415, 173 S.W.2d 1022 (1943).

█ The repossession was committed in the belief that the Credit Company had the right to take the car. It was stipulated that Washington was in default, and the contract and Tex.Bus. & Comm. Code Ann.

§ 9.503 (Supp.1978), gave the Credit Company the right to repossess the car upon default. It is true that the right to repossess was waived, but it was waived by reason of the Credit Company's conduct and not because the Credit Company voluntarily relinquished that right. Such facts are not evidence of a "wanton and malicious" intent on the part of the Credit Company.

That part of the judgment awarding punitive damages is reversed and judgment is here rendered that Washington recover no punitive damages. In all other respects, the judgment is affirmed.