

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00529-CV

**SCHUHARDT CONSULTING PROFIT SHARING PLAN**,
Appellant/Cross-Appellee

v.

**DOUBLE KNOBS MOUNTAIN RANCH, INC.**,
Appellee/Cross-Appellant

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2011-09-28311-CV-B
Honorable Mickey R. Pennington, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  December 17, 2014

REVERSED IN PART, AFFIRMED AS MODIFIED

This case stems from competing motions for partial summary judgment on claims that a real estate note was improperly accelerated. On September 3, 2010, Susan Chacon sold approximately 823 acres of real property to Appellee/Cross-Appellant Double Knobs Mountain Ranch. The transaction was completed with a Note, Deed of Trust, and Warranty Deed with Vendor's Lien. On August 27, 2012, Appellant/Cross-Appellee Schuhardt Consulting Profit Sharing Plan purchased the $520,000 Real Estate Lien Note and Deed of Trust from Chacon and,

after Double Knobs made a late payment in October of 2012, Schuhardt accelerated the note and posted the property for foreclosure.

Double Knobs sought a declaratory judgment that Schuhardt improperly accelerated the note. The trial court, inter alia, granted partial summary judgment in favor of Double Knobs. We reverse the trial court's declaration as to Schuhardt's inequitable conduct and affirm the remainder of the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The Royal Stoner Ranch bordered Chacon's 823-acre property on the west. The ranch was encumbered with an easement providing a legal means of ingress and egress from a public road to the Chacon property. At some point in 2000, a fence was erected along the property line for the purpose of managing the Royal Stoner Ranch's deer population. The fence obstructed the easement. The record supports Chacon was unaware the deer fence had been built, much less any repudiation of the easement. In 2006, the Royal Stoner Ranch was partitioned and a substantial portion was sold to Allan Bloxsom and his related corporate entities, including the Schuhardt Consulting Profit Sharing Plan (collectively Schuhardt). The purchased property included the disputed easement.

On September 3, 2010, Chacon sold her property to Double Knobs for $520,000. Shortly after purchasing the property, Double Knobs notified one of the Royal Stoner Ranch owners of its plans to build an access road on the easement. Approximately nine months later, Double Knobs hired a surveyor to define the parameters of the easement.

## A.   Court Finds Easement Valid and Schuhardt Purchases Note

In August of 2011, based on contentions that the easement terminated due to abandonment, Schuhardt obtained a temporary restraining order prohibiting Double Knobs from using the

easement. On June 12, 2012, after a two-day bench trial, the trial court ruled that the easement allowing access to the property was valid and enforceable.[1]

On July 31, 2012, after the trial court announced its ruling, but before entry of a judgment, Bloxsom retained an attorney for the express purpose of evaluating the enforcement of Chacon's note against Double Knobs. On August 27, 2012, Schuhardt purchased the Note and Deed of Trust from Chacon for $400,000, paying $100,000 more than the Note's fair market value. Bloxsom acknowledged his motivation for purchasing the Note was his desire to gain "negotiating power" against Double Knobs in the prior easement dispute.

At the time of the sale, Double Knobs was current on all payments and the next monthly payment was due on September 1, 2012. The record substantiates that, as of September 1, 2012, (1) Schuhardt had not notified Double Knobs of the transfer of Note and Deed of Trust, (2) had not recorded the Note or Deed of Trust, and (3) Double Knobs was unaware Schuhardt had purchased the Note and Deed of Trust.

**B.      Double Knobs's Payments and Schuhardt's Acceleration of the Note**

As with all previous payments, Double Knobs's September 2012 payment was sent to Chacon's agent, Karen Longhurst. The payment was received on September 10, 2012. Although Chacon had divested herself of any interest in the property, Bloxsom directed Longhurst to endorse the check and deposit the check into Chacon's account. Longhurst then wrote a separate check from Chacon's account to Schuhardt, thereby avoiding Schuhardt's endorsement on Double Knobs's cancelled check.

---

[1] A final judgment confirming the easement in favor of Double Knobs was signed on September 4, 2012. Schuhardt previously appealed the trial court's grant of the easement arguing adverse possession and statute of frauds. This court affirmed the trial court's order on January 22, 2014. *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 808 (Tex. App.—San Antonio 2014, pet. denied).

On September 21, 2012, once again at the direction of Bloxsom, Longhurst sent Double Knobs the following written notification:

> As you know, Susan [Chacon] has sent you notice that she will be traveling and all her payments are to be sent to me at my office in Pipe Creek.
>
> Although Susan has been previously accepting your note payments late, the terms of the note call for payments to be made by the first of the month. So, payment must be made by the first of the month . . . . . The terms of the note will be strictly enforced.
>
> Thank you in advance for your cooperation.

Double Knobs received the letter on September 26th.

Double Knobs's October 2012 payment was not received by the first of the month. On October 2nd, Longhurst *texted* Carlton Thompson, one of Double Knobs's two principals, notifying him the payment was overdue. Neither Thompson nor anyone on behalf of Double Knobs responded to the text.

On October 3, 2012, Schuhardt notified Double Knobs by correspondence that it was the owner and holder of the Note. The letter stated that payment was due on the first of the month and that Double Knobs's failure to make the monthly payment on October 1st constituted default.

> . . . Schuhardt Consulting Profit Sharing Plan, as the Payee, has elected to and does hereby accelerate the outstanding and unpaid balance due under the terms of the Promissory Note.
>
> > . . . .
>
> Payment of the outstanding balances and attorney's fees must be made in immediately available funds and delivered, on or before 3:00 o'clock p.m. on Friday, October 12, 2012. . . .

The notice further provided that if the Note's balance was not timely paid, the property would be posted for foreclosure pursuant to the terms of the Deed of Trust. Although Double Knobs did not respond directly to Schuhardt's October 3, 2012 correspondence, Double Knobs *tendered* the *October payment* to *Chacon* at Longhurst's address on October 5, 2012.

On October 9, 2012, Schuhardt sent Double Knobs a second letter that rejected Double Knobs's October 5th "partial payment" and reiterated that the October 3rd default notice required Double Knobs to remit the full outstanding balance of the Note no later than October 12th and that failure to remit the same would result in commencement of foreclosure proceedings.

On October 10, 2012, Schuhardt filed the Transfer of Note and Lien with the Uvalde County Clerk's Office. Two days later, on October 12, 2012, Schuhardt notified Double Knobs that its property would be sold at foreclosure on November 6, 2012.

## C.     Double Knobs Seeks Relief from Trial Court

On October 19, 2012, Double Knobs sought relief in the original 2011 case including a temporary restraining order, temporary injunction, and declaratory judgment. Double Knobs also brought claims of inequitable conduct, breach of contract, and tort. Schuhardt moved to sever Double Knobs's motions and claims and filed a counter-claim against Double Knobs alleging affirmative defenses of legal justification, waiver and holder in due course, and breach of contract.

After a hearing on October 25, 2012, the trial court granted Schuhardt's motion to sever and Double Knobs's temporary restraining order. The posted November 2012 foreclosure sale was halted. The parties filed competing motions for summary judgment, and after a hearing on March 20, 2013, the court held as follows:

(1)     Double Knobs non-suited its wrongful disclosure, malicious prosecution, and tortious interference claims;

(2)     Double Knobs's partial summary judgment was granted on all grounds;

(3)     Schuhardt's traditional motion for partial summary judgment was denied;

(4)     Schuhardt's no-evidence motion for partial summary judgment was granted in part; and

(5)     Double Knobs's claims for duress, actual fraud, and constructive fraud were dismissed.

Based on a Rule 11 stipulation, both parties agreed that all claims for recovery of attorney's fees would be submitted for decision by the trial court—based on the parties' submission of affidavits and counter-affidavits—and incorporated into the final judgment. The trial court subsequently awarded attorney's fees to Double Knobs and denied Schuhardt's requested attorney's fees.

On July 8, 2013, the trial court signed the Final Judgment and Findings of Fact and Conclusions of Law and this appeal ensued.

### D.    Parties' Arguments on Appeal

Schuhardt argues the trial court wrongfully (1) granted Double Knobs's motion for partial summary judgment concluding Double Knobs was entitled to recover attorney's fees under the Uniform Declaratory Judgment Act, (2) granted Double Knobs's motion for partial summary judgment as to Double Knobs's requests for declarations, (3) denied Schuhardt's traditional motion for partial summary judgment on all of its affirmative defenses to Double Knobs's contractual and equity claims, and (4) awarded attorney's fees to Double Knobs and denied Schuhardt's attorney's fees. Double Knobs filed a cross-appeal alleging the trial court erred in dismissing its claims for duress, actual fraud, and constructive fraud.

We begin our analysis with the trial court's declarations in the final judgment.

### DECLARATORY JUDGMENT

Texas Civil Practice and Remedies Code section 37.003 authorizes a court "to declare rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE ANN. 37.003 (West 2008). "The power to determine an issue of fact, however, 'does not concomitantly carry with it the power to render such a finding of fact as a declaratory judgment.'" *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 699 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 140 (Tex. App.—El Paso 1997, pet. denied)).

Schuhardt contends that because the determination of whether Double Knobs breached the contract is a question of fact, and not a declaration of a right or status, the trial court erred in granting the declaratory judgment. We disagree.

## A. Standard of Review

"When a trial court resolves a declaratory judgment action on competing motions for summary judgment, [appellate courts] review the propriety of the declaratory judgment using the same standards [followed] in reviewing a summary judgment." *BMTP Holdings, L.P. v. City of Lorena*, 359 S.W.3d 239, 243 (Tex. App.—Waco 2011), *aff'd*, 409 S.W.3d 634 (Tex. 2013) (citing *City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008); *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 222 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In our review of the trial court's judgment, we examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam). A defendant moving for traditional summary judgment must conclusively disprove at least one

essential element of each of the plaintiff's claims. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence[,] . . . determine all questions presented[,] . . . [and] render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citations omitted); *accord Mann Frankfort*, 289 S.W.3d at 848; *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

## B. Declarations Contained in the Final Judgment

Double Knobs requested, and the trial court granted, declaratory relief as follows:

a. Double Knobs made or tendered all payments due on the Note, including October 5, 2012 payment;

b. Double Knobs was not in default on the Note and Deed of Trust;

c. Schuhardt breached its obligation by failing to accept Double Knobs's October 5, 2012 payment;

d. Schuhardt's acceleration of the Note failed to comply with the terms of the Note and Deed of Trust because it failed to give notice of default and right to cure prior to acceleration; and

e. Schuhardt engaged in inequitable conduct by attempting foreclosure on the property for reasons other than to preserve the security or protect the debt; and that equity requires the court to declare the acceleration a nullity.

Because the declarations depend on determinations of default, acceleration, and inequitable conduct, we address each as prerequisites to reviewing the declarations.

### 1. Double Knobs's Alleged Default

Schuhardt argues the Note clearly provides payment is due on or before the first of the month. Because Double Knobs did not pay on October 1, 2012, it was in default. Double Knobs contends the Note provided payment was *due* on the first of the month, but was not *late* until the

tenth of the month. Therefore, by tendering payment before the payment was *late* under the Note, Double Knobs could not have been in default. Here, the term default is not defined in the Note.

### a. Statutory Definition

When the term "default" is not defined in a contract, we look to its generally accepted meaning. *See BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485 (Tex. App.—San Antonio 2013, pet. denied); *see also Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007) (examining a term's meaning in an insurance policy and opining that "[t]erms that are not defined in a [contract] are given their generally accepted or commonly understood meaning"). "Default" is defined by Black's Law Dictionary as "the omission or failure to perform a legal or contractual duty." BLACK'S LAW DICTIONARY 449 (8th ed. 2004); *see also Jackson T. Fulgham Co. v. Stewart Title Guar. Co.*, 649 S.W.2d 128, 131 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Default may consist of the failure to make a payment on the loan within a specified period or may be the breach of a covenant, representation, or warranty or the occurrence or nonoccurrence of some event.

The Texas Business and Commerce Code, however, does not define the events constituting default on a loan. Instead, a determination of the circumstances giving rise to a default is generally left to the agreement of the parties. TEX. BUS. & COM. CODE ANN. § 9.601 cmt. 3 (West 2011); *Avdeef v. Nat'l Auto Fin. Co.*, No. 02-10-00344-CV, 2011 WL 6260859, at *4 n.18 (Tex. App.— Fort Worth Dec. 15, 2011, pet. denied) (mem. op.). If no agreement exists, the parties' course of conduct must be analyzed to determine if an implied agreement exists before a default is declared or payment is demanded. *Angeles v. Brownsville Valley Reg'l Med. Ctr., Inc.*, 960 S.W.2d 854, 859 (Tex. App.—Corpus Christi 1997, pet. denied).

### b. Implied Agreement

An implied agreement may arise from the regular course of conduct between the parties and "the facts show that the minds of the parties met on the terms of the contract without any

legally expressed agreement thereto." *Id.*  For example, in *Ford Motor Credit Co. v. Washington*, 573 S.W.2d 616 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.), the court acknowledged the promissory note required payment on the first day of each month, but held the secured party's acquiescence in accepting the debtor's payment on the tenth day of the month waived the secured party's right to declare default on another payment made on the tenth day.  *Id.* at 618; *see Vaughn v. Crown Plumb. & Sewer Serv., Inc.*, 523 S.W.2d 72, 75 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).  *But see Giller Indus., Inc. v. Hartley*, 644 S.W.2d 183, 184 (Tex. App.— Dallas 1982, no writ) ("[T]he parties contracted in advance that a prior waiver of default or breach shall not be a waiver of any subsequent default or breach.").  An implied agreement may also arise "'from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract.'"  *Hous. Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 698 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (quoting *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972)).

Here, the parties agree that Double Knobs did not tender payment by the first of the month. Double Knobs, however, argues that because the terms of the Note specifically provided that payments made after the first of the month, but before the tenth of the month, were not subject to a late payment, Double Knobs's payment on the fifth of the month was not late and Double Knobs was not in default.  In support of its argument, Double Knobs points to its history of payments to Chacon.

Schuhardt, on the other hand, claims any course of conduct between Double Knobs and Chacon is irrelevant; as the owner of the note, the only relevant parties and relationships are Schuhardt and Double Knobs.  As such, Schuhardt contends there was no course of dealing between Schuhardt and Double Knobs.  Moreover, even if a prior relationship existed, Schuhardt contends the September 21st letter repudiated any previous conduct authorizing later payments.

c. <u>Analysis</u>

For almost two years, Chacon accepted twenty-two out of twenty-four payments made after the first, but before the tenth of the month. Double Knobs argues this course of conduct established its payment was not late if paid before the tenth of the month. Double Knobs thus argues that its September 2012 and October 2012 payments were timely and did not constitute a breach. *See Wendlandt v. Sommers Drug Stores Co.*, 551 S.W.2d 488, 490 (Tex. Civ. App.—Austin 1977, no writ) ("Appellants assented to and accepted, without protest, for at least 1-1/2 to 2 years, a course of conduct whereby appellee made payment of rentals after the first of each month, the mailing of the November, 1974, rental check by appellee on November 4, 1974, did not constitute a breach of the lease in question."); *see also Laney v. Austin Auto Air Conditioning, Inc.*, No. 03-98-00305-CV, 1999 WL 231029, at *3 (Tex. App.—Austin Apr. 22, 1999, no writ) (concluding that "repeated acceptance of late payments with no evidence of complaint curtailed [Appellant's] right to terminate the lease for late payments without warning"). We agree.

Double Knobs and Chacon's conduct created an implied agreement, or at least an understanding, that the terms of the Note provided for payment by Double Knobs prior to the tenth day of the month. Although a party who previously allowed late payments can demand strict compliance in the future, the secured party must allow the debtor a reasonable time to comply with the new demands after actual receipt of notice from the secured party. *See Ford Motor Credit Co.*, 573 S.W.2d at 617. Schuhardt's contention it provided Double Knobs with notice of its intent to demand strict compliance with the Note is disingenuous at best. The record shows Schuhardt took affirmative steps to mislead Double Knobs as to the true owner of the property. *See Am. Bank of Waco v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 172 (Tex. App.—Waco 1991, writ denied) ("Texas courts . . . [do] not permit enforcement of acceleration clauses when the debtor's default was due . . . to the creditor's own fraudulent or inequitable conduct."). Bloxsom specifically

directed Longhurst to act in such a way to preclude Double Knobs from discovering the Note had been sold. Prior to Schuhardt's October 3rd letter, Double Knobs had no basis to question the identity of the holder of the Note or any changes to the parties' accepted payment practices.

Based on the information available, Double Knobs reasonably relied on its previous relationship with Chacon. We, therefore, conclude Double Knobs's October 5th payment was timely based on its previous course of conduct with Chacon. *See Ford Motor Credit Co.*, 573 S.W.2d at 618; *Am. Bank of Waco*, 818 S.W.2d at 172. For these reasons, Double Knobs was entitled to a declaration that (1) it timely made or tendered all payments due on the Note, including the October 5, 2012 payment; (2) it was not in default under the Note or the Deed of Trust; and (3) Schuhardt breached its obligation under the Note by failing to accept Double Knobs's October 5, 2012 payment.

### 2. *Default and Acceleration of the Note*

Schuhardt argues Double Knobs's own actions resulted in foreclosure. When Double Knobs did not timely pay, Schuhardt informed Double Knobs that no late payments would be accepted. Schuhardt contends that Double Knobs (1) failed to respond to either Longhurst's September 12th letter or to the October 2nd text sent to Thompson and (2) did not tender its October payment until October 5th. Schuhardt, therefore, avers that, when Double Knobs failed to make its October payment on October 1st, Schuhardt was entitled to accelerate.

#### a. Acceleration Viewed with Disfavor

Texas courts disfavor acceleration because it imposes a severe burden on the mortgagor. *See Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.) ("Acceleration is a harsh remedy with draconian consequences for the debtor and Texas courts look with disfavor upon the exercise of this power because great inequity may result."); *see also Allen Sales & Servicenter, Inc. v. Ryan*, 525 S.W.2d 863, 866 (Tex. 1975) ("The accelerated maturity of a note,

which is initially contemplated to extend over a period of months or years, is an extremely harsh remedy."). Because acceleration is viewed as such a harsh remedy, any ambiguous clause providing for acceleration is construed against acceleration. *Ramo, Inc. v. English*, 500 S.W.2d 461, 466 (Tex. 1973) ("[P]reference should be given to that construction which will avoid the forfeiture and prevent acceleration of the maturity of the debt.") (quoting *Motor & Indus. Fin. Corp. v. Hughes*, 302 S.W.2d 386, 394 (Tex. 1957)).

### b. Notice of Intent to Accelerate Required

The holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991). The maker, however, may waive his right to notice of intent to accelerate and notice of acceleration. *Id.* We must therefore determine whether there is evidence that Double Knobs waived notice of acceleration.

### (1) Waiver

"The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "Waiver is ordinarily a question of fact." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). "Where the facts and circumstances are admitted or clearly established, however, the question becomes one of law." *Id.*

Waiver "is effective if and only if it is ***clear and unequivocal***." *Shumway*, 801 S.W.2d at 893 (emphasis added); *see also Parker*, 852 S.W.2d at 744; *Ogden v. Gibralter Sav. Ass'n*, 640 S.W.2d 233, 234 (Tex. 1982). A waiver is clear and unequivocal if it states specifically and separately the rights surrendered. *Shumway*, 801 S.W.2d at 893.

In *Shumway*, the Texas Supreme Court held that ambiguity in the pertinent waiver language makes waiver of notice of intent to accelerate ineffective. *Id*. Unless the right to notice of intent to accelerate is waived by the debtor, the mortgagee must give the mortgagor clear and unequivocal notice of its intent to accelerate. *Id*. The court concluded that the waiver in question waived notice of acceleration but not notice of intent to accelerate. *Id*. at 894–95; *see also Ogden*, 640 S.W.2d at 233 (rejecting as ineffective a notice letter stating "Failure to cure such breach . . . may result in acceleration of the sums secured by the Deed of Trust and sale of the property standing as security thereunder").[2]

(2)    The Note

Schuhardt contends the Note clearly and unequivocally waives Double Knobs's right to notice of the holder's intent to accelerate.

> Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, protests, and notices of protest.

Double Knobs counters Schuhardt ignores the contradictory language in the Deed of Trust, which must be construed in consideration with the Note as a whole document. *Mathis v. DCR Mortg. III Sub I, L.L.C.*, 389 S.W.3d 494, 507 (Tex. App.—El Paso 2012, no pet.).

> If Grantor defaults on the Note or fails to perform any of Grantor's obligations or if default occurs on a prior lien note or other instrument, *and* the default continues *after Beneficiary gives Grantor notice of the default and the time with which it*

---

[2] Additional cases on notice of intent to accelerate include *Motor & Industrial Finance Corp. v. Hughes*, 302 S.W.2d 386, 394 (Tex. 1957); *Tamplen v. Bryeans*, 640 S.W.2d 421, 422 (Tex. App.—Waco 1982, writ ref'd n.r.e.) (holding that failure to give notice of intent to accelerate can result in foreclosure sale being set aside); *Purnell v. Follett*, 555 S.W.2d 761, 764–65 (Tex. Civ. App.—Houston [14th Dist.] 1977, no writ) (holding letter to debtor advising that default "in any of [mortgagor's] monthly payments" would result in acceleration not broad enough to cover subsequent default in tax payments); *Crow v. Heath*, 516 S.W.2d 225, 228 (Tex. Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.) (requiring notice of intention to accelerate to state explicitly that failure to cure default would result in foreclosure and would entail possibility of deficiency judgment).

***must be cured***, as may be required by law, or by written agreement, then Beneficiary may:

a.  declare the unpaid principal balance and earned interest on the Note immediately due. . . .

(emphasis added).

Schuhardt asserts the additional language refers to the Note's waiver, thereby avoiding the obligation stated in the Deed of Trust to provide prior notice of intent to accelerate. Schuhardt contends this notice can be contained in either the Note or Deed of Trust because to require otherwise would be unnecessarily duplicative.

### 3.  Analysis

We conclude the note and the deed of trust in *Mathis* are materially similar to the documents in this case. *Mathis*, 389 S.W.3d at 505–06. In that case, Mathis argued that both documents should be read and construed together as if in a single instrument, and by doing so, the additional language contained in the deed of trust rendered the waiver ineffective. *Id.* Relying on this court's analysis in *Dolci v. Askew*, No. 04-95-00867-CV, 1997 WL 428560, at *3 (Tex. App.—San Antonio 1997, no pet.) (not designated for publication), the El Paso Court of Appeals agreed holding "the note and the deed of trust must be construed together because they were executed by the same parties on the same day, they pertain to the same real property, each document references the other, and the deed of trust is identified as the security for the note." *Mathis*, 389 S.W.3d at 507; *see also Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 868 (Tex. App.—Dallas 2005, no pet.). "In ascertaining the drafter's intent, the court must examine the document as a whole and strive to give every part of it effect." *Mathis*, 389 S.W.3d at 507.

When read together, the Note and the Deed of Trust at issue create "a reasonable doubt as to whether the parties clearly and unequivocally intended to waive notice of default and time to

cure, which amounts to notice of intent to accelerate." *Id.* Accordingly, we conclude Schuhardt was required to provide Double Knobs with notice of intent to accelerate and an opportunity to cure. *Id.*; *see also Shumway*, 801 S.W.2d at 893.

We next look to the record to determine what, if any, of Schuhardt's actions constituted sufficient notice of intent to accelerate and an opportunity to cure. Specifically, we look at Longhurst's September 21st correspondence and Longhurst's October 5th text message, both sent at Bloxsom's direction.

### c.      Sufficiency of Notice of Intent to Accelerate and Opportunity to Cure

Notice must clearly inform the mortgagor of each event that is considered by the mortgagee to be a default. *Shumway*, 801 S.W.2d at 892–93. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. *Id.* (citing *Ogden*, 640 S.W.2d at 233). In *Ogden*, the court looked at the language contained in the letter notifying Ogden that he was in default. 640 S.W.2d at 233–34. Ogden argued the letter was insufficient notice of acceleration because it failed to give unequivocal notice that his failure to pay would result in acceleration. *Id.* at 233. The court held that the statement "failure to cure such breach on or before [September 16, 1978] *may* result in acceleration of the sums secured by the Deed of Trust and sale of the property standing as security thereunder," *id.* (alteration in original), was not "clear and unequivocal notice that Gibraltar would exercise the option [but] merely restated [the existence of] the option conferred in the deed of trust," *id.* at 234. The mortgagee must "bring home to the mortgagor that failure to cure will result in acceleration of the note and foreclosure under the power of sale." *Id.* at 233; *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 569–70 (Tex. App.—Amarillo 2013, pet. denied).

(1)     September 21, 2012 Letter

On September 21, 2012, Bloxsom directed Longhurst to provide Double Knobs written notification reminding Double Knobs that during Chacon's travels, all payments were to be sent to Longhurst. The correspondence also indicated that although Chacon "had been previously accepting [Double Knobs's] note payments late," the terms of the note required payment by the first of the month.

Double Knobs argues that the "September 21st letter merely regurgitates the Note's language that payments are due on the 1st of the month, adding vaguely that the Note's terms will be strictly enforced." The Note did not provide any indication the Note was sold or that payments were being forwarded to Schuhardt. Double Knobs contends (1) the September 21st correspondence simply restated the terms of the Note under which payment had been made for almost two years and (2) did not unequivocally or clearly inform Double Knobs that payments made after the first of the month would be refused and result in acceleration of the Note. We agree.

Given the drastic consequences of acceleration, Texas courts generally construe unclear or equivocal language in a manner to avoid acceleration. *Ogden*, 640 S.W.2d at 233. Schuhardt's September 21st letter failed to notify Double Knobs that any changes were being made in the previous payment structure or that Double Knobs's failure to make payment on the first of the month will result in acceleration. The note does not provide the clear and unequivocal language that "failure to cure will result in acceleration of the note." *Ogden*, 640 S.W.2d at 233; *see also Mastin*, 70 S.W.3d at 154. For this reason, the September 21, 2012 letter does not constitute notice of default or provide an opportunity to cure.

(2)     The October 2, 2012 Text Message

On October 2, 2012, Bloxsom again instructed Longhurst to communicate with Double Knobs. Specifically, Bloxsom directed Longhurst to send a text message to Carlton Thompson, a

principal of Double Knobs, notifying Thompson that Double Knobs's October payment was overdue. Neither Thompson nor anyone on behalf of Double Knobs responded to the text message. Although Schuhardt appears to argue the text message was notification to Double Knobs, Schuhardt has not provided any support for his argument.

The actual content of the text message does not appear to be part of the appellate record. Without such, we cannot conclude the "notice" informed Double Knobs of the event Schuhardt considered in default or that "notice" informed Double Knobs of Schuhardt's intent to accelerate the debt. *See Shumway*, 801 S.W.2d at 892–93. Having found no basis for the October 2, 2012 text message to constitute proper notice under *Shumway* or *Ogden*, we conclude the text message did not provide notice of default to Double Knobs and did not provide Double Knobs an opportunity to cure. *See id.*; *Ogden*, 640 S.W.2d at 233–34.

### (3) Analysis

Neither the September 21st letter nor the October 2nd text message constituted notice of default to Double Knobs. Additionally, neither provided Double Knobs an opportunity to cure any alleged default prior to any acceleration of the Note by Schuhardt. Absent such notice, the Note and Deed of Trust required Schuhardt to accept the October 5, 2012 payment. The trial court, therefore, properly concluded that (1) Schuhardt breached its obligation under the Note by failing to accept Double Knobs's October 5, 2012 payment and (2) Double Knobs was entitled to a declaration that Schuhardt's acceleration of the Note failed to comply with the terms of the Note and Deed of Trust because it failed to give notice of default and right to cure prior to acceleration.

Having concluded the trial court's declarations that Double Knobs was not in default and that Schuhardt wrongfully accelerated the Note, we turn to the trial court's declaration that Schuhardt engaged in inequitable conduct in attempting to foreclose on Double Knobs's property for reasons other than to preserve the security or protect the debt.

### 3.    *Inequitable Conduct by Schuhardt*

#### a.    Arguments of the Parties

Schuhardt contends that, contrary to the court's conclusion, it was exercising its rights within the Note and Deed of Trust and did not act inequitably by accelerating the Note and posting the Double Knobs's property for non-judicial foreclosure. Schuhardt further argues that a declaratory judgment is not appropriate because the determination of whether it engaged in inequitable conduct is a question of fact and not a declaration of "rights, status, and other legal relations." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003 (West 2013). Additionally, Schuhardt argues the present facts do not provide a basis for declaratory relief because Double Knobs is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy. *See Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 258–59 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Barnett v. City of Colleyville*, 737 S.W.2d 603, 606–07 (Tex. App.—Fort Worth 1987, writ denied).

Double Knobs counters that the summary judgment evidence does not support Schuhardt acquired the Note and accelerated the Note in good faith. Double Knobs argues the Note must be considered in relationship to Bloxsom's deceptive and misleading conduct; and, thus, equity precluded acceleration because Schuhardt attempted to foreclose for reasons other than to protect the debt or preserve the security. *See Dhanani Inv.*, 650 S.W.2d at 223; *Vaughan*, 523 S.W.2d at 72.

#### b.    Analysis

Whether an individual has engaged in unlawful or inequitable conduct is a question of fact. *See World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.—Forth Worth 1998, pet. denied) (explaining that whether inequitable conduct has occurred is fact question); *City of*

*Dall. v. Davis*, 266 S.W. 544, 547 (Tex. Civ. App.—Waco 1924, no writ) (same); *see also Grant v. Laughlin Envtl., Inc.*, No. 01-07-00227-CV, 2009 WL 793638 (Tex. App.—Houston [1st Dist.] Mar. 26, 2009, pet. denied) (mem. op.). *See also World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.—Forth Worth 1998, pet. denied) (reasoning that whether "inequitable conduct" has occurred is "fact question"); *City of Dall. v. Davis*, 266 S.W. 544, 547 (Tex. Civ. App.—Waco 1924, no writ) (noting that whether "inequitable" or "unlawful" conduct has occurred is question of "fact").

Purely factual disputes are not properly resolved with a declaratory judgment. *Indian Beach*, 222 S.W.3d at 700 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 37.007). Here, whether Schuhardt engaged in inequitable conduct does not answer or provide for a right, status, or other legal relation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003. Because the trial court's declaration that Schuhardt engaged in inequitable conduct was not a proper declaration under the UDJA, summary judgment on inequitable conduct was not proper. Accordingly, we reverse the trial court's declaration that Schuhardt acted inequitably.

### BREACH OF CONTRACT CLAIM

Having concluded Double Knobs was entitled to declarations that it was not in default and that Schuhardt wrongfully accelerated the Note, we next turn to Double Knobs's breach of contract claim.

### A. Requirements for Breach of Contract Claim

To recover on its breach of contract claim, Double Knobs was required to conclusively establish each of the following elements: the existence of a valid contract, its performance or tendered performance, Schuhardt's breach of the contract, and damages sustained as a result of their breach. *See Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 131–32 (Tex. App.—Dallas 2014, no pet.); *Killeen v. Lighthouse Elec. Contractors, L.P.*, 248 S.W.3d 343, 349 (Tex.

App—San Antonio 2007, pet. denied). To prevail on appeal, Double Knobs must have conclusively proved each element of its claim. *Killam Ranch Props., Ltd. v. Webb Cnty.*, 376 S.W.3d 146, 158 (Tex. App.—San Antonio 2012, pet. denied) (citing *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972)). "[W]hile the factual determination of what actions were taken is for the fact finder, whether those actions constitute a breach of contract is a question of law for the court." *Benavides v. Benavides*, No. 04-11-00252-CV, 2011 WL 5407493, at *1 (Tex. App.—San Antonio Nov. 9, 2011, pet. denied) (mem. op.) (citing *In re Cano Petroleum, Inc.*, 277 S.W.3d 470, 473 (Tex. App.—Amarillo 2009, orig. proceeding)).

Here, based on the summary judgment evidence, the trial court concluded, as a matter of law, that Double Knobs proved each element of their breach of contract claim: Double Knobs performed under the contract, Schuhardt breached the terms of the Note and Deed of Trust by accelerating the Note and attempting to foreclose on the property, and Schuhardt's actions resulted in harm to Double Knobs.

## B.     Arguments of the Parties

Schuhardt argues Double Knobs did not seek, prove, or recover any damages from Schuhardt and, that without conclusive evidence of damage, the trial court erred in granting summary judgment on Double Knobs's breach of contract claim.

Double Knobs counters that although the trial court's judgment omitted a finding of nominal damages, the finding is implicit in its determination that Double Knobs was entitled to attorney's fees under section 38.001 of the Uniform Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2008). More specifically, Double Knobs contends that when equitable relief is awarded to a litigant in connection with a finding of breach of contract, including specific performance or other non-monetary damages, the litigant is entitled to attorney's fees.

Because the parties focus on damages, we limit our discussion to Double Knobs's proof of damages.

**C.     Analysis**

Double Knobs's breach of contract claim was based on forcing Schuhardt to perform under the contract—to accept the October payment as timely.  Specific performance is an equitable remedy that may be awarded for a breach of contract, *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied), and is an alternative remedy to damages. *Levetz v. Sutton*, 404 S.W.3d 798, 805 (Tex. App.—Dallas 2013, pet. denied) (citing *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571, 575 (Tex. App.—Fort Worth 2008, pet. denied)).  "Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate." *Stafford*, 231 S.W.3d at 535; *see also Davis v. Luby*, No. 04–09–00662–CV, 2010 WL 3160000, at *3 (Tex. App.—San Antonio Aug. 11, 2010, no pet.) (mem. op.) ("Specific performance is an equitable remedy that may be awarded at the trial court's discretion upon a showing of breach of contract.").

When a party has demonstrated it "performed, or tendered performance of, [its] obligations under the contract," but monetary damages are not adequate, specific performance may be substituted for the monetary damages.  *Stafford*, 231 S.W.3d at 535.  Because default would invariably lead to foreclosure, Double Knobs sought a court order mandating Schuhardt accept the October payment.  Monetary damages were not an adequate remedy for Double Knobs's alleged breach.  Because Double Knobs's suit centered on enforcing the provisions of the contract, i.e. keeping possession of the property, specific performance requiring Schuhardt to accept the October payment is an appropriate remedy.  *Id.*  We, therefore, conclude that Double Knobs sought

specific performance. Accordingly, the trial court properly concluded Double Knobs was entitled to summary judgment on its breach of contract claim as a matter of law.

We next turn to whether the trial court erred in awarding attorney's fees to Double Knobs under the UDJA.

### ATTORNEY'S FEES

#### A.     Standard of Review

The Uniform Declaratory Judgments Act allows a trial court to award "reasonable and necessary attorney's fees as are equitable and just." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). The Act "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "Unreasonable fees cannot be awarded [under the Act], even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.* A party need not prevail to be awarded attorney's fees under the Uniform Declaratory Judgments Act. *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 701 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Hunt v. Baldwin*, 68 S.W.3d 117, 135 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

An award of attorney's fees under the Act is reviewed for an abuse of discretion. *Bocquet*, 972 S.W.2d at 21. A trial court does not abuse its discretion if some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). To find an abuse of discretion, the reviewing court must conclude the trial court acted without reference to any guiding rules or principles, such that the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

**B.      Double Knobs's Attorney's Fees**

The trial court awarded Double Knobs $267,434 in attorney's fees, plus $184,250 in appellate fees. The judgment provides Double Knobs was entitled to attorney's fees in accordance with Chapters 38 and 39 of the Texas Civil Practice and Remedies Code. We address each separately.

*1.      Texas Civil Practice and Remedies Code Chapter 38*

Section 38.001 provides that "[a] person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001. To recover, the claimant must (1) prevail on a breach of contract claim and (2) recover damages. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004) (per curiam).

To recover attorney's fees "'in *addition* to the amount of a valid claim,' the claimant must recover some amount on that claim." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009); *accord Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (concluding that if zero damages are awarded for breach, the claimant is not entitled to recover attorney's fees under 38.001).

Schuhardt argues that the final judgment did not award damages, so Double Knobs cannot recover under Chapter 38. *See MBM Fin. Corp.*, 292 S.W.3d at 666; *Green Int'l, Inc.*, 951 S.W.2d at 390. We agree. During oral argument on this matter, Double Knobs's counsel conceded the only damages awarded were nominal and were based on a presumption of an omitted finding. Because the record does not support an award of actual damages for breach of contract, Double Knobs may not collect attorney's fees under Chapter 38. *See MBM Fin. Corp.*, 292 S.W.3d at 666; *Green Int'l, Inc.*, 951 S.W.2d at 390.

2.       *Recovery under UDJA – Chapter 37*

Chapter 37 of the Texas Civil Practice and Remedies Code provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.  The trial court may award costs and reasonable and necessary attorney's fees that it deems equitable and just, even to a non-prevailing party.  *Feldman v. KPMG LLP*, No. 01-12-00934-CV, 2014 WL 1745887, at *7 (Tex. App.—Houston [1st Dist.] May 1, 2014, no pet.) (citing *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996)); *accord Funes v. Villatoro*, 352 S.W.3d 200, 217 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

a.       Arguments of the Parties

Schuhardt contends that Double Knobs cannot recover attorney's fees based on its request for declaratory relief.  Specifically, Schuhardt contends that a party cannot use the Uniform Declaratory Judgments Act as a vehicle to obtain otherwise impermissible attorney's fees and Texas law prohibits such fees unless specifically provided by contract or statute.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006); *Profinance Assocs. Inc. v. Cohen-Sagi*, No. 04-10-002420CV, 2011 WL 2150356, at *4–5 (Tex. App.—San Antonio June 1, 2011, pet. denied) (mem. op.) (providing that one cannot merely "tack on" attorney's fees by use of a declaratory judgment action).

Double Knobs counters that its UDJA cause of action is the primary and essential means for addressing Schuhardt's attempt to foreclose on Double Knobs's ranch properties and for securing the future of the Double Knobs Mountain Ranch.  If anything, the breach of contract claim was "tacked onto" its petition for declaratory and injunctive relief which was prompted by the immediate threat of a nonjudicial foreclosure sale.  *Cf. Profinance Assocs.*, 2011 WL 2150356, at *4–5.

We must therefore determine whether Double Knobs's timely payment and lack of default are "question[s] of construction or validity arising under the . . . contract . . . and [declare] rights, status, or other legal relations thereunder." *See* TEX. CIV. PRAC. & REM. ANN. § 37.004(a).

        b.        <u>Analysis</u>

A party may not use the Uniform Declaratory Judgment Act merely as a "vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp.*, 292 S.W.3d at 669. In *MBM Financial Corp.*, the court explained that when a declaratory action ***provides a speedy, effective, and simpler remedy*** capable of terminating the potential controversy ***before substantial damages are incurred***, then it is not considered an action "merely tacked onto a standard suit based on a matured breach of contract." *Id.* at 670 (emphasis added). "The declaratory judgment claim must do more 'than merely duplicate the issues litigated' via the contract or tort claims." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) (citing *MBM Fin. Corp.*, 292 S.W.3d at 670). The purpose of declaratory judgments is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b).

Double Knobs contends it sought and obtained a declaration of the parties' rights and obligations under the Note and Deed of Trust that will govern the relationship of the parties for the duration of the Note. We agree.

We have previously concluded that Double Knobs's payments between the first and the tenth of each month did not constitute an act of default and the Note and the Deed of Trust prohibited Schuhardt from accelerating the Note without first providing Double Knobs with notice of default and an opportunity to cure. The trial court's declarations that (1) Double Knobs's September and October payments were timely and (2) that Double Knobs was not in default were declarations of rights—not elements of the breach of contract claim. The declarations also

provided the basis for the trial court's injunction precluding Schuhardt from foreclosing on the property based on any events arising from September or October events. *See Halliburton Energy Servs., Inc. v. Axis Tech., LLC*, No. 05-13-00854-CV, 2014 WL 4294178, at \*9 (Tex. App.—Dallas Aug. 21, 2014, no pet.). Double Knobs's declaratory judgment was not solely a resolution of a factual dispute, but declares Double Knobs's rights under the contract. *See Querencia Props., S. de R.L. de C.V. v. New Querencia Capital Partners, L.L.C.*, 224 S.W.3d 348, 352 (Tex. App.—Dallas 2006, no pet.); *see also Indian Beach*, 222 S.W.3d at 700.

Because Double Knobs's declaratory judgment claims did not merely duplicate the issues contained within its breach of contract claim, we conclude nothing precluded the trial court from proceeding with the declaratory judgment action and in granting attorney's fees under section 37.009 of the Uniform Declaratory Judgments Act. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *MBM Fin. Corp.*, 292 S.W.3d at 670; *Querencia*, 224 S.W.3d at 352. We, therefore, overrule this issue.

Having addressed each of Schuhardt's issues on appeal, we turn to Double Knobs's issues asserted in its cross-appeal.

### CROSS-APPEAL – TORT CLAIMS

Schuhardt also moved for a no-evidence summary judgment on Double Knobs's claims of duress and fraud asserting there was no evidence to support one or more essential elements of the claims. Specifically, Schuhardt argued there was no evidence that (1) Schuhardt threatened to do something that Schuhardt had no legal right to do; (2) Schuhardt engaged in illegal exaction, fraud, or deception; or (3) there was an imminent restraint present that was sufficient to destroy Double Knobs's free agency and it had no means of protection. The trial court granted the no-evidence summary judgment. In its cross-appeal, Double Knobs asserts the trial court wrongfully dismissed its tort claims. We disagree with Double Knobs's position.

## A.     Standard of Review

"A no-evidence summary judgment is essentially a pre-trial directed verdict" to which we apply a legal sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). The nonmovant in a no-evidence motion for summary judgment has the burden to raise a genuine issue of material fact by producing more than a scintilla of probative evidence. TEX. R. CIV. P. 166a(i); *King Ranch*, 118 S.W.3d at 751; *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). If the nonmovant fails to meet its burden, no-evidence summary judgment is proper. *See King Ranch, Inc.*, 118 S.W.3d at 751; *Moore*, 981 S.W.2d at 269. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc.*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)); *Moore*, 981 S.W.2d at 269. "[T]he evidence must be viewed in the light most favorable to the non-movant." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *accord Moore*, 981 S.W.2d at 269.

## B.     Duress

### 1.     Arguments of the Parties

Double Knobs contends Schuhardt's conduct in wrongfully accelerating the balance due under the Note and in posting Double Knobs's property for foreclosure coerced Double Knobs's principal, David Thompson, into relocating Double Knobs's horse breeding operations and transporting the business's mares and stallions to a newly leased stable and pastures in Kentucky. It argues that but for the duress created by Schuhardt's unlawful and wrongful acts, Thompson would have kept his horses on the Double Knobs Mountain Ranch and avoided the $79,000 in expenses incurred in moving the operation to Kentucky.

Schuhardt counters that Double Knobs's summary judgment response did not raise a scintilla of evidence that Schuhardt threatened to do something that Schuhardt had no legal right

to do or that Schuhardt engaged in illegal exaction, fraud, or deception. Schuhardt contends that neither the Note nor the Deed of Trust prohibited the assignment to Schuhardt and both instruments were freely assignable under their terms and Texas law. Additionally, even though Schuhardt's failure to file the Transfer of Lien and Note prior to October 3, 2012, was not intentional, Schuhardt was under no legal duty to record the assignment or to inform Double Knobs of the assignment before accelerating the Note or posting the property for foreclosure.

### 2.  *Economic Duress*

Economic duress occurs when one party takes unjust advantage of the other party's economic necessity or distress to coerce the other party into making an agreement. *See King v. Bishop*, 879 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1994, no writ). It is a defense to the enforcement of the contract. *Id.* A party claiming duress must show

    (1)     a threat or action was taken without legal justification;

    (2)     the threat or action was of such a character as to destroy the other party's free agency;

    (3)     the threat or action caused the opposing party's free will to be overcome and caused the other party to do that which it would not otherwise have done and was not legally bound to do;

    (4)     the restraint was imminent; and

    (5)     the opposing party had no present means of protection.

*Graybar Elec. Co. v. LEM & Assocs., L.L.C.*, 252 S.W.3d 536, 546 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also King*, 879 S.W.2d at 223. Whether the acts or conduct of the party accused constitutes duress is a question of law, but whether duress exists in a particular situation is generally a question of fact dependent upon the circumstances surrounding the situation. *Matthews v. Matthews*, 725 S.W.2d 275, 278 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

*3.      Analysis*

Even assuming Double Knobs's argument that Schuhardt behaved "badly" is valid, that is not sufficient.  The Note and Deed of Trust were assignable and Schuhardt's purchase of such was legal.  Similarly, even if Schuhardt's intentions were not noble, the Note and Deed of Trust were still enforceable even without being recorded.  *See* TEX. PROP. CODE ANN. § 13.001.  Because Double Knobs's summary judgment evidence failed to raise a genuine issue of material fact by producing more than a scintilla of probative evidence as to whether Schuhardt's actions were without legal justification, we conclude the trial court properly granted Schuhardt's no-evidence summary judgment motion on duress.  TEX. R. CIV. P. 166(a)(i); *Smith*, 288 S.W.3d at 424; *Graybar Elec. Co.*, 252 S.W.3d at 546.

**C.      Fraud**

*1.      Arguments of the Parties*

Double Knobs contends that Schuhardt's conduct, acting through its Trustee, Alan Bloxsom, was fraudulent in that Bloxsom made representations concerning the ownership of the Note for the purpose of inducing Double Knobs to believe that Chacon still owned the Note and that the course of business established during the preceding two years for payment of the Note was still in effect.  Additionally, Schuhardt's representations that a default had occurred and that the Note could be accelerated without providing an opportunity to cure were false and contrary to the express language found in the Deed of Trust.  Bloxsom's false statements and deceptive conduct were undertaken with the intent that Double Knobs would rely on them, and Double Knobs relied on the statements to its detriment.  As such, Schuhardt's conduct constitutes actionable fraud.

Schuhardt counters there is no evidence that Schuhardt's failure to disclose its ownership and retention of Longhurst to act as an intermediary amounted to a false representation or that Double Knobs relied on any such representation to its detriment.

2.      *Common Law Fraud*

To establish a common law fraud cause of action, a plaintiff must prove (1) a material representation was made, (2) which was false, (3) which was either known to be false when made or made recklessly as a positive assertion without knowledge of its truth, (4) which the speaker made with intent that it be acted upon, (5) the other party took action in reliance upon the misrepresentation, and (6) thereby suffered injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *accord DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).

Once again, Double Knobs's summary judgment evidence may raise concerns as to whether Schuhardt acted "badly." The evidence does not, however, provide more than a scintilla of probative evidence that Schuhardt actually made a material misrepresentation or that Double Knobs relied on any such misrepresentation. We note that the alleged misrepresentations actually informed Double Knobs that the payments were late. There was no suggestion that late payments would be tolerated or that Double Knobs need not pay timely. We have previously determined that Schuhardt was under no legal obligation, including any fiduciary duty, to notify Double Knobs of the assignment. *See generally* TEX. PROP. CODE ANN. § 13.001; *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419 (Tex. App.—Houston 14th Dist.] 1998, no pet.). Because Double Knobs's summary judgment evidence failed to raise a genuine issue of material fact by producing more than a scintilla of probative evidence as to whether Schuhardt made a material misrepresentation and that Double Knobs relied on such, the trial court properly granted Schuhardt's no-evidence summary judgment. *See* TEX. R. CIV. P. 166(a)(i); *Smith*, 288 S.W.3d at 424.

## CONCLUSION

The record supports Double Knobs's contention that Double Knobs's and Chacon's conduct created an implied agreement that the terms of the Note required payment by Double

Knobs prior to the tenth of the month. Accordingly, Double Knobs was entitled to a declaration that (1) it timely made or tendered all payments due on the Note, including the October 5, 2012 payment; (2) it was not in default under the Note or the Deed of Trust; and (3) Schuhardt breached its obligation under the Note by failing to accept Double Knobs's October 5, 2012 payment. *See Ford Motor Credit Co.*, 573 S.W.2d at 618.

We further conclude that when the Note and Deed of Trust are read and construed together, Schuhardt was required to provide Double Knobs with notice of intent to accelerate and an opportunity to cure. *See Mathis*, 389 S.W.3d at 507. Neither the September 21st letter nor the October 2nd text constituted notice of intent to accelerate. Accordingly, Schuhardt breached its obligation under the Note by failing to accept Double Knobs's October 5th payment and Double Knobs was entitled to a declaration that Schuhardt's acceleration of the Note failed to comply with the terms of the Note and the Deed of Trust.

The summary judgment evidence conclusively established that Double Knobs was entitled to summary judgment on its breach of contract claim as a matter of law and its declaratory judgment claims were not duplicative of its breach of contract claim. *See Killam Ranch Props.*, 376 S.W.3d at 158; *MBM Fin. Corp.*, 292 S.W.3d at 670; *Querencia*, 224 S.W.3d at 352. Double Knobs was, therefore, entitled to attorney's fees.

Additionally, because Double Knobs's summary judgment evidence failed to raise a genuine issue of material fact, the trial court properly granted Schuhardt's no-evidence summary judgment as to Double Knobs's claims of duress and fraud.

However, because the question of inequitable conduct is not a declaration of rights, status, or other legal relations, we reverse the trial court's declaration that "SCHUHARDT engaged in inequitable conduct by attempting foreclosure on the property owned by DOUBLE KNOBS for reasons other than to preserve the security or protect the debt." Accordingly, we modify the trial

court's judgment to delete the above declaration and affirm the trial court's judgment as modified.

*See* TEX. R. APP. P. 43.2(a).

Patricia O. Alvarez, Justice