The CITY OF HELOTES, Appellant,

v.

Balous MILLER, Appellee.

No. 04–06–00564–CV.

Court of Appeals of Texas, San Antonio.

Oct. 3, 2007.

Paul A. Fletcher, David L. Earl, Earl & Associates, P.C., San Antonio, TX, for Appellant.

Ryan G. Anderson, Barry A. McClenahan, Cathleen M. Stryker, McClenahan, Anderson & Stryker, P.L.L.C., San Antonio, TX, for Appellee.

Sitting: SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from the trial court's denial of the City of Helotes's plea to the jurisdiction. We affirm.

## BACKGROUND

Appellee, Balous Miller, is the owner of approximately thirty-one acres of land located at the intersection of State Highway 16 and Scenic Loop Road in Bexar County, Texas. The land is outside the municipal limits of the appellant, the City of Helotes ("the City"). In September 2004, Miller contracted to sell approximately twenty-eight acres of the land to Wal–Mart Stores Texas, L.P. ("Wal–Mart") for the purpose of commercial/retail development. The sale was contingent upon Wal–Mart being able to develop the property for a retail store. Miller retained the remaining land to develop compatible commercial sites.

In November 2004, Miller designated Wal–Mart as his agent to act on his behalf in connection with the development of the property, and Wal–Mart applied for licenses and permits and entered into services contracts. Subsequently, according to Miller, Wal–Mart obtained the following: (1) a Permit to Construct Access Driveway Facilities on Highway Right of Way, (2) a Utility Services Agreement with the San Antonio Water System, and (3) permits issued by the City for development of the property.

At some point in early 2005, the City initiated annexation proceedings on the property and passed interim development controls. In August 2005, the City passed

a resolution opposing "the development of a Wal–Mart, or other 'big box' department store within the municipal corporate limits or the extraterritorial jurisdiction" of the City. The resolution also stated the City "may take those actions authorized by law to prevent the location of a Wal–Mart or other 'big box' department store within the [C]ity's municipal corporate limits or the extraterritorial jurisdiction."

On November 10, 2005, Miller filed an original petition for declaratory relief. In his petition, Miller alleged the annexation proceeding was still pending and additional interim development controls had since been imposed prohibiting (1) property owners from filing any "application for zoning of property in the annexation area," (2) property owners from filing any "application for approval of a preliminary subdivision plat, a subdivision plat, or replat of property in the annexation area," and (3) the City from accepting any "application for zoning of property in the annexation area." Miller asked the court to declare that his land use rights vested as of October 24, 2004 and that the City may not abridge those vested rights to inhibit, impede, or preclude the commercial development of the property.

In December 2005, Wal–Mart announced that this location was "no longer being considered." Through its engineering firm, Wal–Mart requested, and received, a refund on the application fees from the City in the amount of $14,435.00. In July 2006, the City filed its plea to the jurisdiction, arguing the trial court did not have jurisdiction because a "justiciable controversy" did not exist on the grounds that (1) Miller's claim became moot after Wal–Mart abandoned the project and (2) Miller's claim was not ripe because there is no existing project in which he has vested rights. The trial court denied the plea, and this appeal by the City ensued.

## STANDARD OF REVIEW

When a plea to the jurisdiction challenges the pleadings, we must determine whether the plaintiff has pled facts that affirmatively establish the trial court's subject-matter jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). In our review, we accept the allegations in the pleadings as true and construe the allegations in favor of the pleader. *Id.* When the facts underlying the merits of the case and the trial court's subject-matter jurisdiction are intertwined, and the State asserts, with supporting evidence, that the trial court lacks subject-matter jurisdiction, the plaintiff must show there is a disputed material fact regarding the jurisdictional issue. *Texas Dept. of Parks and Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). When consideration of a trial court's subject-matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. *Miranda,* 133 S.W.3d at 226.

In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and

the fact issue will be resolved by the fact finder. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## JUSTICIABLE CONTROVERSY

A declaratory judgment is appropriate only if there is a justiciable controversy about the rights and status of the parties and the declaration will resolve the controversy. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute." *Bexar–Medina–Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n,* 640 S.W.2d 778, 779–80 (Tex.App.-San Antonio 1982, writ ref'd n.r.e).

Ripeness and mootness are threshold issues that implicate subject-matter jurisdiction. *Patterson v. Planned Parenthood of Houston and Southeast Texas, Inc.,* 971 S.W.2d 439, 442 (Tex.1998) (ripeness); *Labrado v. County of El Paso,* 132 S.W.3d 581, 589 (Tex.App.-El Paso 2004, no pet.) (mootness). The constitutional roots of justiciability doctrines, such as ripeness and mootness, lie in the prohibition on advisory opinions. *Patterson,* 971 S.W.2d at 442. Texas courts are not empowered to give advisory opinions. *Id.* at 443.

Ripeness emphasizes the need for a concrete injury for a justiciable claim to be presented. *Id.* at 442. "At the time a lawsuit is filed, ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* "Ripeness thus focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (citation omitted). A case is not ripe if its resolution depends on contingent or hypothetical facts, or upon events not yet come to pass. *Id.* at 443. "A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allstate Ins. Co. v. Hallman,* 159 S.W.3d 640, 642 (Tex. 2005).

Miller originally filed his declaratory judgment action to determine his rights while the Wal–Mart project was still on-going. On appeal, Miller contends Wal–Mart's decision to abandon its plans did not render his claim moot because there still remains a development project for which a determination of his rights is necessary. He asserts he is entitled to develop the property free of the City's zoning regulations because he initiated the development prior to the City obtaining regulatory control over the property via annexation. Thus, according to Miller, a declaratory judgment action will resolve his dispute with the City by establishing the development controls under which he must proceed. The City asserts Miller's claim is moot because Wal–Mart terminated its real estate contract with Miller, and Miller is not continuing with the Wal–Mart project. The City argues Miller's claim is not ripe because the Local Government Code requires that permits be issued or denied for a controversy to be ripe for adjudication and no permits have been issued to Miller or denied. We disagree with the City, and for the following reasons, conclude a real and substantial controversy exists.

The Texas Legislature has created a system under which property developers may rely on land-use regulations in effect at the time "the original application for [a]

permit is filed...." TEX. LOC. GOV'T CODE ANN. § 245.002(a) (Vernon 2005). "Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time: (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or (2) a plan for development of real property or plat application is filed with a regulatory agency." *Id.* A "permit" is defined as "a license, certificate, approval, registration, consent, permit, contract or other agreement for construction related to, or provision of, service from a water or wastewater utility owned, operated, or controlled by a regulatory agency, or other form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought." *Id.* § 245.001(1). A "project" is defined as "an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor." *Id.* § 245.001(3). Furthermore, a municipality may not, after annexing an area, prohibit a person from: (1) beginning to use land in the area in the manner that was planned for the land before the ninetieth day before the effective date of the annexation if: (a) one or more licenses, certificates, permits, approvals, or other forms of authorization by a governmental entity were required by law for the planned land use; and (b) a completed application for the initial authorization was filed with the governmental entity before the date the annexation proceedings were instituted. TEX. LOC. GOV'T CODE ANN. § 43.002(a) (Vernon Supp.2006).

We conclude Miller alleged sufficient facts to survive a plea to the jurisdiction. Clearly, Miller, though his agent Wal-Mart, filed an original application for a permit, driveway permits were obtained, a contract with SAWS was executed, the City's fire department reviewed the property, and multiple preliminary plats had been filed with the City. The fact that Miller's anchor tenant withdrew from the commercial development project does not automatically moot the question of what regulations control the development of the property. The question then becomes whether the "project" remains the same. Miller argues he intends to develop the property with another large retail store, such as Wal-Mart, as the anchor tenant. In his amended response to the City's interrogatory, in which he was asked to "detail the 'project' currently envisioned for the Property as that term is used in" section 245.002(b), Miller responded as follows:

> [Miller] intends to develop the property commercially. The long term plan for the property has been a multi-use development focused on retail. To that end, a driveway permit was obtained and a contract was entered into with the SAWS for provision of water. It is not possible for [Miller] to describe the project in further detail without knowledge of the result of its vested rights in the property. [Miller] has not secured a new buyer due to the City's actions in driving out Wal-Mart and improperly rezoning the property at issue.

This is sufficient to at least raise a fact issue on whether Miller's current intended development of the property is the same as the land use contemplated when Miller, through his agent, filed the original application in late 2004. *See City of San Antonio v. En Seguido, Ltd.,* 227 S.W.3d 237 (Tex.App.-San Antonio 2007, no pet.) (finding existence of fact issue on whether the

project En Seguido sought to pursue in 2004 was a change from the project envisioned by a 1971 subdivision plat). Because a fact issue exists on whether the project remains the same after Wal–Mart's withdrawal as anchor tenant, it would have been improper for the trial court to grant the plea to the jurisdiction at this time. Accordingly, we affirm the trial court's order.