**Affirm in part; Reverse and Remand in part; Opinion Filed August 22, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00422-CV

### ALAN GERTNER, AS LEGAL REPRESENTATIVE OF AND FOR THE ALAN D. GERTNER IRA, Appellant
### V.
### HQZ PARTNERS, L.P., LANG AND COMPANY, LLC, JIM LANG, BRUCE COOK, AND RAY WALTER, Appellees

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-03044-H**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Evans, and Brown
Opinion by Justice Evans

In this suit for failure to pay under a note and guaranty, Alan Gertner, as legal representative of and for the Alan D. Gertner IRA, appeals the trial court's order both sustaining the pleas to the jurisdiction filed by HQZ Partners, L.P., Lang and Company, LLC, Jim Lang, Bruce Cook, and Ray Walter (collectively "appellees") and granting their traditional and no evidence motions for summary judgment. In four issues, Gertner contends the trial court erred in concluding it had no subject matter jurisdiction over his claims and that no justiciable controversy existed among the parties. Gertner further contends he produced sufficient summary judgment evidence to defeat appellees' motion for no evidence summary judgment on his claims for common law and statutory fraud. Finally, Gertner contends the trial court erred in implicitly

denying his motions for no evidence summary judgment on appellees' defenses. We reverse the trial court's order to the extent it grants appellees' pleas to the jurisdiction and motion for traditional summary judgment and remand Gertner's claims for breach of the note and guaranty and for attorney's fees to the trial court for further proceedings. We affirm the trial court's order granting appellees' motion for no evidence summary judgment on Gertner's claims for fraud. We do not address Gertner's issues relating to his motions for no evidence summary judgment on appellees' defenses because we conclude nothing in the trial court's order constitutes an explicit or implicit ruling on those motions.

## BACKGROUND

On April 3, 2008, Jim Lang, on behalf of Lang and Company, LLC as general partner of HQZ Partners, L.P., executed a promissory note with a principal amount of $3,700,000 (the "Note"). The Note was made payable to eleven lenders,[1] each of which was listed in the Note along with the portion of the principal amount payable to each. Among the lenders was the Alan D. Gertner IRA. With respect to the Gertner IRA, the Note stated it was payable "[t]o the extent of $560,000.00 plus interest on such principal amount to the order of Equity Trust Company Custodian FBO Alan D. Gertner, IRA, 15.14% undivided interest." The Note also contained a guaranty signed by Lang, Ray Walter, and Bruce Cook stating that they "severally, absolutely, irrevocably, and unconditionally guarantee payment of the Note according to its terms to the same extent as if [they] were borrowers." The Note had a maturity date of April 3, 2009 and stated it was payable in full at that time. Upon default, the unpaid balance, earned interest, and any other amounts owed on the Note could be declared due immediately. The Note further

---

[1] Although all eleven lenders are listed under the heading "Lender" and the Note frequently refers to the term "Lender" in the singular, the Note also states that "[w]hen context requires, singular nouns and pronouns include the plural."

stated that the borrower could refinance the loan at maturity, but the lenders were under no obligation to participate in the refinancing.

Also on April 3, 2008, Lang executed a deed of trust for the property securing the Note. The deed of trust defined the term "Note" to include "all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust." The deed of trust further defined the term "Lender" to include any mortgage servicer for the named lenders. The deed stated that the lenders could "remedy any default without waiving it" and "waive any default without waiving any prior or subsequent default."

Two weeks after the Note and deed were signed, Gertner signed a loan servicing agreement ("LSA") pursuant to which Walter Servicing Corporation was appointed to serve as the Gertner IRA's agent in servicing the loan. The other lenders on the Note signed substantively identical LSAs with Walter Servicing. In the event of a default on the Note, the LSAs provided that

> [Walter Servicing] shall give notice of such to Lenders, and is authorized and instructed to take all reasonable steps necessary to collect any sums due and remedy any default . . . . Lenders who have aggregately funded a majority of the original principal amount of the Note ("Majority Lenders") shall have the right to instruct [Walter Servicing] to exercise the remedies under the terms of the Note and/or Deed of Trust. If Borrower is in default under the terms of the Note and/or Deed of Trust, [Walter Servicing] shall immediately give or cause to be given proper notice to Borrower, accelerate the Note and foreclose on the Property in accordance with the terms of the Deed of Trust if directed by the Majority Lenders.

Shortly after the Note and LSA were executed, Gertner discharged Equity Trust Company as custodian of his IRA and engaged Sunwest Trust as custodian. Gertner signed a contract with Sunwest under which he agreed the IRA was self-directed. The contract further stated that Gertner "agree[d] to be responsible for any and all collection actions, including . . . instituting legal action, and bringing any other suits or actions which may become necessary to protect the rights of [the IRA] as a result of the operation or administration of my investments."

–3–

Any legal filings made on behalf of the investments were to be made in the name of "Sunwest Trust, Inc. Custodian for the Self-Directed IRA of [Alan D. Gertner]." Gertner agreed that he would prosecute any legal action, but would not institute an action on behalf of his investments without Sunwest Trust's written consent.

On April 3, 2009, the Note's maturity date, Gertner participated in a telephone conference that included Lang, Walter, and a representative of Walter Servicing. Gertner stated during the call that, if the Note went into default, he would immediately terminate the LSA. It is undisputed that the Note was not paid on its maturity date and Gertner terminated the servicing agreement with Walter Servicing. Approximately six weeks later, appellees and a majority of the other lenders on the Note signed a modification and extension agreement extending the maturity date of the Note to October 9, 2009. Thereafter, the Note was extended on a yearly basis.

Gertner brought this suit in his own name on March 15, 2013 alleging claims for breach of the Note and guaranties and seeking judicial foreclosure of the deed of trust. Gertner asserted that any renewals and extensions of the Note were ineffective as to the IRA's interest because the IRA was no longer a party to a contract allowing the majority of lenders to determine what remedies would be pursued in the event of a default. Gertner obtained written consent to litigate from Sunwest Trust in June 2013. The consent agreement acknowledged that Gertner could initiate the legal action but required Sunwest Trust, as custodian of the IRA, to be named as a plaintiff along with the IRA. The agreement further stated that Gertner would have sole authority to make all decisions regarding the legal action, including agreements of settlement or final resolution of any claim.

In response to the suit, appellees filed pleas to the jurisdiction asserting Gertner did not have standing individually to bring claims to enforce the Note and guaranties. Gertner then

amended the petition to name the Gertner IRA as plaintiff and himself as the IRA's legal representative. He did not, however, name Sunwest Trust as an additional plaintiff. In the live pleading, Gertner, on behalf of the IRA, alleged claims against appellees for breach of the Note, breach of the guaranties, common law fraud, statutory fraud and attorney's fees.

Following Gertner's amendment to name the IRA as plaintiff, appellees filed amended pleas to the jurisdiction asserting that Gertner had neither standing nor capacity to bring the claims alleged. They further asserted there was no live controversy to be resolved because the Note was renewed and extended and, therefore, was not in default. Appellees also filed traditional and no evidence motions for summary judgment asserting there was no evidence of fraud and arguing, again, that the renewal and extension of the Note rendered Gertner's claims for breach of the Note and guaranties "moot." Gertner filed numerous no evidence motions for summary judgment challenging appellees' asserted defenses of accord and satisfaction, estoppel, laches, statute of limitations, ambiguity, justification, waiver, ratification, release, and modification.

Following a hearing, the trial court granted appellees' pleas to the jurisdiction as well as their motions for traditional and no evidence summary judgment and dismissed all Gertner's claims.[2] Gertner brings this appeal challenging the trial court's granting of appellees' pleas and motions and what he terms the trial court's "implicit denial" of his no evidence motions.

---

[2] Specifically, the trial court granted the "HQZ Defendants' First Amended Plea to the Jurisdiction, Defendant Ray Walter's First Amended [Plea] to the Jurisdiction, All Defendants' Supplemental Plea to the Jurisdiction, and All Defendants' Traditional and No Evidence Motions for Summary Judgment." Walter also filed a separate motion for summary judgment that raised additional grounds for summary judgment including the defense of statute of limitations. Walter's motion was not addressed in the trial court's order and is not a subject of this appeal.

## ANALYSIS

### A. Pleas to the Jurisdiction

A plea to the jurisdiction is a dilatory plea, the purpose of which is to challenge the trial court's jurisdiction and defeat a cause of action without regard to whether the claim has merit. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). In this case, appellees' pleas to the jurisdiction challenged the trial court's subject matter jurisdiction over Gertner's claims by contending Gertner had neither standing nor capacity to bring the claims asserted and the claims were either not ripe for adjudication or were moot because the Note was not in default. Whether the trial court has subject matter jurisdiction is a question of law that we review de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

#### 1. Standing and Capacity

To bring suit and recover on a cause of action, a plaintiff must have both standing and capacity. *See Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 255 (Tex. App.—Dallas 2005, no pet.). Only standing, however, implicates the court's jurisdiction. *See John C. Flood of DC, Inc. v. Supermdia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied). The general test for standing in Texas requires (a) a real controversy between the parties that (b) will be actually determined by the judicial declaration sought. *See Nootsie, Ltd. v. Williamson Cty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). A plaintiff has standing when it is personally aggrieved, regardless of whether it has legal authority to bring suit. *Id.* at 661. In contrast, a party has capacity when it has legal authority to act regardless of whether it has a justiciable interest in the controversy. *Id.* Because capacity is not a jurisdictional issue, a plea to the jurisdiction cannot be granted based on a lack of capacity. *See City of Port Isabel v. Pinnell*, 161 S.W.3d 233, 238 (Tex. App.—Corpus Christi 2005, no pet.)

Appellees' pleas to the jurisdiction challenged Gertner's ability to enforce the Note on behalf of the IRA. Although a party may refer to another party's entitlement to sue on a contract as an issue of "standing," it is not truly a standing issue because it does not affect the jurisdiction of the court; it is a decision on the merits. *See Flood*, 408 S.W.3d at 651. When a party suing for breach of a contract does not have the capacity to sue on the contract, the proper disposition may be summary judgment on the merits, but it is not dismissal for want of jurisdiction. *Id.*

Gertner originally brought this suit in his own name, but later amended his pleadings to bring suit as the legal representative of the Gertner IRA. In their brief on appeal, appellees concede the IRA, as a lender on the Note, may own a claim for breach of the Note and guaranties. They assert, however, that Gertner's amendment of his pleadings to name the IRA as plaintiff, rather than himself individually, did not cure his lack of standing to bring suit because he lacks capacity to act on behalf of the IRA. Appellees further assert that the IRA cannot act alone to enforce the Note and guaranties because the obligations under those contracts are owed to the lenders as a collective unit and can be enforced only by the lenders collectively. These arguments raise issues of capacity and entitlement to sue. Neither argument implicates standing. There is no dispute that the IRA, as a lender on the Note, has a justiciable interest in any controversy over whether the Note is in default. This controversy would be resolved by the judicial declaration Gertner seeks on behalf of the IRA. Accordingly, Gertner, has sufficiently demonstrated standing to bring the present suit. The challenges raised by appellees to Gertner's capacity to bring the suit on behalf of the IRA and the IRA's ability to enforce the Note individually go to the merits of the claims presented rather than the trial court's subject matter jurisdiction. We conclude, therefore, the trial court could not properly dismiss Gertner's claims for want of jurisdiction on those grounds. *See id.*; *see also, Pinnell*, 161 S.W.3d at 238.

## 2. Ripeness and Mootness

The next basis for dismissal raised by appellees was that the trial court lacked subject matter jurisdiction because Gertner's claims were either moot or not yet ripe. Ripeness and mootness are threshold issues that implicate subject matter jurisdiction. *City of Helotes v. Miller*, 243 S.W.3d 704, 708 (Tex. App.—San Antonio 2007, no pet.). The foundation of these two doctrines lies in the prohibition against giving advisory opinions and the consequent requirement that there be a justiciable controversy. *See id.* A case is not ripe if its resolution depends on contingent or hypothetical facts or upon events that have not yet come to pass. *Id.* A case becomes moot if the controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Id.*

In their pleas to the jurisdiction, appellees contended there was no justiciable controversy among the parties because the Note was renewed and extended and, therefore, was not yet or was no longer in default. In the trial court, appellees' only argument supporting their contention that the Note was renewed and extended was that the loan servicer for the majority of the lenders authorized the renewal and extension of the loan and they attached the renewal and extension documentation. In response to the pleas, Gertner noted, and appellees have acknowledged, that the loan servicer was no longer acting on behalf of the Gertner IRA at the time of the renewals and extensions. Based on this, Gertner has contended the renewals and extensions were not effective as to the Gertner IRA's interest in the Note. Appellees provided no evidence or argument in their pleas of mootness challenging Gertner's contention or explaining why the renewals and extensions were effective as to the Gertner IRA.

The issue of the effectiveness of the modification and renewal is the central dispute to be resolved in the lawsuit and goes to the merits of Gertner's claims. Appellees made no showing that Gertner's arguments about the renewals and modifications fail as a matter of law. And even

if appellees had made such a showing, this would not indicate that Gertner's claims are moot, but rather that they fail on the merits which does not divest the trial court of subject matter jurisdiction. Appellees merely assumed in their pleas that the Note was not yet due even though Gertner has contended that his interest in the Note became due long ago. To the extent this dispute could be considered one that implicates a "jurisdictional fact," whether the Note is in default implicates the merits and cannot be resolved in a plea to the jurisdiction.[3] *See Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217 227–28 (Tex. 2004) (disputed jurisdictional facts implicating merits of claim cannot be resolved in plea to jurisdiction).

The facts underpinning Gertner's claims have already occurred and there is nothing hypothetical about the question of whether the Note, in whole or in part, is currently in default; that is, whether it is due or has been renewed and extended. The controversy over what, if anything, appellees currently owe the Gertner IRA under the terms of the Note continues to exist. Accordingly, neither ripeness nor mootness precludes the trial court from having subject matter jurisdiction over the claims presented. We conclude the trial court erred in granting appellees' pleas to the jurisdiction. We resolve Gertner's first issue in his favor.

## B. Appellees' Motions for Summary Judgment

In his second issue, Gertner contends the trial court erred in granting appellees' motions for traditional and no evidence summary judgment.[4] Appellees moved for traditional summary judgment on the ground of mootness and for a no evidence summary judgment on Gertner's fraud claims. The trial court did not specify the grounds upon which it granted appellees'

---

[3] The trial court made findings of fact and conclusions of law in connection with its dismissal of Gertner's claims for lack of subject matter jurisdiction. Among the findings made by the trial court was that the Note and guaranty were not in default. Because nothing in the pleas addressed Gertner's contention that the renewals and extensions were not effective as to the IRA, the trial court had no grounds upon which it could make this finding as a matter of law and any finding of fact on the issue was improper. *See Miranda*, 133 S.W.3d at 227–28.

[4] Although a trial court cannot rule on substantive motions once it has determined it lacks jurisdiction over the claims presented, because we have determined the trial court erred in granting the pleas to the jurisdiction, we will address its ruling on appellees' motions for summary judgment.

motions so we will address both grounds. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

### 1. Mootness

In their joint motion for traditional summary judgment, appellees repeated their argument that Gertner's claims should be dismissed as moot because the Note was not currently in default. As discussed above, the issue of whether the Note is in default is disputed and is central to the merits of Gertner's claims. Nothing in the motion challenged Gertner's contention that the renewals and extensions were not effective as to the IRA's interest in the Note. The motion, like the pleas to the jurisdiction, merely assumes the renewal and extension were effective as to the Note in its entirety. Clearly a controversy presently exists between Gertner and appellees over the current status of the Note in which the IRA has a legally cognizable interest. A decision by the trial court on the merits of the issues presented would resolve the matters currently in dispute.[5] Because there is a live controversy among the parties, the trial court could not grant summary judgment and dismiss Gertner's claims as moot. *See Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988).

### 2. Fraud

Appellees moved for a no evidence summary judgment on Gertner's common law and statutory fraud claims asserting, among other things, that there was no evidence of a false representation or, alternatively, no evidence appellees knew any alleged misrepresentations were false when they were made. Once a movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *See*

---

[5] Appellees contend the trial court has already resolved this issue in its finding that the Note and guaranties are not in default. This finding was made in connection with the pleas to the jurisdiction, not the motion for summary judgment, and we have already concluded the finding was improper. *See supra* n. 3. Appellees' motion for summary judgment did not present the merits of the default issue as a ground for summary judgment, but merely argued Gertner's claims were moot. A party cannot obtain summary judgment on a ground not presented in the motion. *See* Tex. R. Civ. P. 166a(c), *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). .

–10–

*SW. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We review a no evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). Our inquiry focuses on whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *See King Ranch*, 118 S.W.3d at 751; *Flood*, 294 S.W.3d at 762. If the respondent fails to produce summary judgment evidence raising a genuine issue of material fact, the court must grant the no evidence motion. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

Among the requirements to show common law fraud is a false, material representation that the maker knew was false when it was made or made recklessly without knowledge of the truth. *See Ins. Co. of N. America v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). A promise of future performance is an actionable misrepresentation if made with no intention of performing. *See Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Similarly, statutory fraud requires a false representation of a past or existing material fact or a false promise to do an act made with the intention of not fulfilling it. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2015).

In his response to appellees' no evidence summary judgment motion on the fraud claims, the only false representations and promises Gertner alleged occurred were the terms of the Note and guaranty and statements made in a loan summary provided to him relating to the IRA's contribution to the loan. With respect to the terms of the Note, Gertner contends that appellees' failure to honor the promises and representations made in the Note with respect to payment proves the falsity of those statements, or at least rises to the level of a scintilla of evidence of fraud. It is well established, however, that the mere failure to perform a contract is not evidence

–11–

of fraud. *See Formosa Plastics*, 960 S.W.2d at 48. Gertner provided no evidence that appellees did not intend to honor the promises made in the Note at the time the Note was made or were reckless in making those promises.

The guaranty stated that Lang, Walter, and Cook "unconditionally guarantee[d] payment of the note according to its terms . . . ." To show that the guarantors never intended to guaranty the Note, Gertner relies on an email sent to him and some of the other investors on July 19, 2011—more than three years after the guaranty was signed. The email was drafted in response to inquiries by the investors which included a question about whether the guarantors had "the necessary wealth to back up the guarantee." The response to that question was:

> "[t]he guarantors have personally guaranteed the note (and again the modification) to show good faith to the lenders on this loan. The guarantors never indicated any wealth or financial backing to support this project but rather to express their personal commitment to the lenders and to the deal. The real backing of this loan is with the collateral . . ."

This response does not, as contended by Gertner, show that the guarantors never intended to guaranty the loan. Indeed, it reaffirms that they continue to be personally liable on the Note. The guaranty contained no representations about the financial status of the individual guarantors or what funds would be used to fulfill the guarantors' obligations. Accordingly, nothing in the email demonstrates that any representation in the guaranty was false.[6]

The final representations on which Gertner relied in his response to the motion were contained in a loan summary provided to him before the IRA entered into the loan. The first representation is a description of the borrower:

> Lang and Company, LLC has good liquidity and a net worth of over $1,000,000. Owner Jim Lang has 35 years experience in land development. Jim

---

[6] On appeal, Gertner references other emails that he contends show the guarantors never intended to personally guarantee the Note. These emails were not referenced or presented to the trial court as summary judgment evidence in response to appellees' motion for no evidence summary judgment, however, so they cannot be considered in our review of the trial court's ruling on that motion. *See* TEX. R. CIV. P.166(a)(i).

> Lang has participated in over $500 million in commercial and residential construction. This includes shopping centers, office parks, multi story office buildings and residential homes.

Gertner fails to show how any part of this representation is false. Accordingly he has not demonstrated how the statements could constitute actionable fraud.

The remaining statements in the loan summary upon which Gertner relied to create a fact issue were statements relating to the term of the Note and the loan's "exit strategy." The term of the Note was stated to be a "12 month balloon note" with the notation that the lenders would "most likely receive payoff in 9-12 months." The "exit strategy" was "Bank financing will pay off all liens once development is complete in about 9 months. Developed lots will be sold at market value." Again, Gertner states that appellees' failure to pay off the Note when it was originally due and continually extending its due date is some evidence that those statements were fraudulent. As discussed above, mere evidence of failure to perform a contract as promised is not evidence of fraud. Gertner failed to produce any evidence that appellees did not intend to fulfill the terms of the Note or perform as specified in the loan summary at the time the Note was signed. Accordingly we conclude Gertner failed to raise a genuine issue of material fact on his fraud claims. The trial court properly granted appellees' motion for no evidence summary judgment. We resolve Gertner's second issue against him.

## C. Gertner's Motions for Summary Judgment

In his third and fourth issues on appeal, Gertner contends the trial court erred in implicitly denying his motions for no evidence summary judgment on appellees' affirmative defenses. We see nothing in the trial court's order that would constitute an implicit ruling on those motions. The trial court's granting of the pleas to the jurisdiction and the motion for traditional summary judgment did not, and could not, address the merits of Gertner's claims or, by extension, the merits of appellees' defenses to those claims. Neither does the trial court's determination that

Gertner failed to produce evidence sufficient to raise a fact issue on his fraud claims implicate the merits of appellees' defenses. Because the trial court has not ruled on Gertner's motions for no evidence summary judgment, by implication or otherwise, we will not address Gertner's issues related to those motions.

**D. Conclusion**

Based on the foregoing, we reverse the trial court's order to the extent it grants appellees' pleas to the jurisdiction and motion for traditional summary judgment and remand appellee's claims for breach of the Note and guaranty and for attorney's fees to the trial court for further proceedings. We affirm the trial court's order granting appellees' motion for no evidence summary judgment on Gertner's claims for common law and statutory fraud.

<table>
<tr><td></td><td>/David Evans/</td></tr>
<tr><td></td><td>DAVID EVANS</td></tr>
<tr><td>150422F.P05</td><td>JUSTICE</td></tr>
</table>



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

ALAN D. GERTNER, AS LEGAL
REPRESENTATIVE OF AND FOR THE
ALAN D. GERTNER IRA, Appellant

No. 05-15-00422-CV      V.

HQZ PARTNERS, L.P., LANG AND
COMPANY, LLC, JIM LANG, BRUCE
COOK, AND RAY WALTER, Appellees

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-03044-H.
Opinion delivered by Justice Evans. Justices
Lang-Miers and Brown participating.

      In accordance with this Court's opinion of this date, the order of the trial court is
**AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's
order granting HQZ Partners, L.P.'s, Lang and Company, LLC's, Jim Lang's, Bruce Cook's, and
Ray Walter's pleas to the jurisdiction and motion for traditional summary judgment. In all other
respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for
further proceedings consistent with this opinion.

      It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 22nd day of August, 2016.