

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00288-CV

**DCP SAND HILLS PIPELINE, LLC**,
Appellant

v.

**SAN MIGUEL ELECTRIC COOPERATIVE, INC.**,
Appellee

From the 36th Judicial District Court, McMullen County, Texas
Trial Court No. M-16-0033-CV-A
Honorable Starr Boldrick Bauer, Judge Presiding

### OPINION ON MOTION FOR REHEARING

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: November 18, 2020

AFFIRMED IN PART; VACATED IN PART; REVERSED AND REMANDED IN PART

On September 28, 2020, appellee San Miguel Electric Cooperative, Inc. filed a motion for rehearing of our August 12, 2020 opinion and judgment in this case. We deny the motion, sua sponte withdraw our August 12, 2020 opinion and judgment, and substitute this opinion and judgment in their stead.

Appellee sued appellant DCP Sand Hills Pipeline, LLC seeking: (1) a declaration that DCP's pipeline easement was invalid, void, or voidable; (2) a declaration that its strip mining

rights under a lignite lease were superior to DCP's pipeline easement rights; and (3) a permanent injunction requiring DCP to relocate its pipeline. In response, DCP asserted that San Miguel's lignite lease had expired and sought to condemn the land covered by its easement. On cross-motions for summary judgment, the trial court declared San Miguel's strip mining rights superior to DCP's pipeline easement rights and dismissed DCP's condemnation counterclaim. The trial court then ordered DCP to move its pipeline and awarded San Miguel attorney's fees.

On DCP's appeal, we: (1) reverse the portion of the trial court's judgment granting San Miguel's motion for summary judgment on DCP's condemnation counterclaim; (2) vacate the portion of the trial court's judgment denying DCP's motion for summary judgment on the right to take; (3) reverse the portion of the trial court's judgment awarding San Miguel attorney's fees; (4) affirm the portion of the trial court's judgment granting the remainder of San Miguel's motion for summary judgment; (5) affirm the portion of the trial court's judgment denying DCP's motion for summary judgment; and (6) remand the cause to the trial court for further proceedings.

## BACKGROUND

San Miguel is a nonprofit electric cooperative that owns and operates a power plant that furnishes electricity to South Texas Electric Cooperative, Inc. South Texas Electric Cooperative then distributes power to thirty-nine counties in South Texas. The only source of fuel for San Miguel's power plant is the lignite it strip mines in Atascosa and McMullen counties.

DCP is a common carrier, operating a twenty-inch pipeline that runs near the surface of the land for 721 miles in twenty-eight Texas counties. DCP's pipeline is part of a larger pipeline system that transports 20% of all the natural gas liquids produced in the Permian Basin and Eagle Ford Shale to the Gulf Coast for processing.

In 1954, Clifton and Nora Wheeler granted San Miguel's predecessor in interest a no-term coal, lignite, and mineral lease covering 2,200 acres in McMullen County ("the Wheeler Tract").

This lignite lease granted San Miguel exclusive rights from the surface to a depth of 350 feet to harvest lignite and other minerals by strip mining—a method that destroys the surface. It also reserved the Wheelers' right to explore oil, gas, and other minerals below 350 feet so long as such exploration did not interfere with the strip mining operations. In 1975, the Wheelers and San Miguel's predecessor amended the lease to reserve the Wheelers' right to use the surface for grazing and agriculture so long as that use did not interfere with the strip mining operations.

No work occurred on the Wheeler Tract for a number of years. By 1972, however, San Miguel's predecessor in interest began strip mining lignite north of the Wheeler Tract, and in 1975, San Miguel started preparing to mine the Wheeler Tract. To that end, it conducted environmental, archeological, anthropological, and aerial studies, examined flood plain surveys, and drilled holes to extract cores on different areas of the property. It also built a highway overpass across the land.

In 2011, DCP agents negotiated a pipeline easement over the Wheeler Tract with Lee Wheeler and Nancy Wheeler Plumlee, two of the Wheelers' grandchildren and successors in interest. During these negotiations, Lee told DCP about the lignite lease, and DCP met with San Miguel to discuss the pipeline's proposed route. By August of that year, DCP and San Miguel agreed on a route that would not interfere with San Miguel's planned mining operations, and DCP installed its first pipeline on the Wheeler Tract.

In December of 2011, DCP began negotiating with Lee and Nancy about a second pipeline. Lee and Nancy subsequently granted DCP a fifty-foot-wide easement to construct and operate a second pipeline over twelve acres of the Wheeler Tract. In early 2013, DCP completed installation of this second pipeline 4,000 to 5,000 feet north of the first pipeline. It is undisputed that both pipelines were located south of San Miguel's actual mining operations at the time and that DCP did not discuss this second pipeline with San Miguel.

In March of 2014, San Miguel discovered the second pipeline in a section of the Wheeler Tract referred to as Area G, and informed DCP that the pipeline interfered with its future mining operations. At the time, San Miguel was not actually mining Area G and had not yet filed a permit for Area G with the Texas Railroad Commission; however, it sent DCP a copy of its future mining sequence showing its plan to mine Area G and asserted a superior right to use the surface of the Wheeler Tract under its lignite lease. DCP told San Miguel it would discuss relocating the pipeline, and San Miguel moved forward with its mining plan by applying for a permit to mine Area G.

DCP ultimately refused to move the second pipeline and San Miguel sued seeking: (1) a declaration that the pipeline easement granted by the Wheelers to DCP was invalid, void, or voidable to the extent it interfered with San Miguel's rights under the lignite lease; (2) a declaration that San Miguel's rights under the lignite lease were superior to DCP's rights under the pipeline easement; (3) a permanent injunction requiring DCP to relocate the pipeline; and (4) attorney's fees. In response, DCP filed a counterclaim seeking to condemn the land covered by its pipeline easement. It also argued that the lignite lease was invalid[1] and that San Miguel was not entitled to attorney's fees under the Uniform Declaratory Judgments Act (UDJA) because San Miguel's requested relief was a disguised trespass to try title action for which attorney's fees are not recoverable.

After the parties filed competing motions for summary judgment, the trial court granted San Miguel's motion and denied DCP's motions, and the parties agreed to a bench trial regarding San Miguel's requests for an injunction and attorney's fees. After the bench trial, the court signed

---

[1] In related litigation between the Wheelers and San Miguel pending in the same trial court, the Wheelers also argued the lignite lease was invalid. The trial court rejected that argument and we affirmed, finding the lignite lease valid. *See Wheeler v. San Miguel Elec. Coop.*, No. 04-19-00332-CV, 2020 WL 3547987, at *6–7 (Tex. App.—San Antonio July 1, 2020, pet. filed) (op.).

a judgment: declaring San Miguel's rights under the lignite lease superior to DCP's pipeline easement rights; declaring DCP's pipeline easement void, invalid, and/or voidable; awarding attorney's fees to San Miguel under the UDJA; and ordering DCP to remove the sections of its pipeline that interfered with San Miguel's strip mining operations.

DCP attempted to supersede the judgment by posting a bond; San Miguel asked to post security to enforce the judgment. The trial court denied DCP's request and authorized San Miguel, as a judgment creditor, to post security in the amount of $7,000,000 to enforce the judgment. After San Miguel posted a letter of credit, DCP filed its notice of appeal and relocated the pipeline.

## ANALYSIS

### *Mootness*

Because mootness is a threshold issue that implicates subject matter jurisdiction, we begin by addressing San Miguel's argument that DCP's condemnation counterclaim became moot when it relocated the pipeline. *See City of Helotes v. Miller*, 243 S.W.3d 704, 708 (Tex. App.—San Antonio 2007, no pet.). According to San Miguel, since DCP no longer seeks to condemn the land covered by its easement, this court's actions cannot affect DCP's rights. Below, however, DCP sought a declaratory judgment that before it should be ordered to move the pipeline, San Miguel "would first need to advance to DCP all damages DCP would incur in connection with" moving the pipeline. The trial court set that amount at $7,000,000 and required San Miguel to post security before it ordered DCP to move the pipeline.

DCP's entitlement to those damages is affected by our disposition. As a result, this court's judgment will affect these parties' rights. *See Pinnacle Gas Treating, Inc. v. Read*, 104 S.W.3d 544, 545 (Tex. 2003) (per curiam) (holding that because appellate court judgment affirming or reversing a trial court's order affected parties' substantial rights, a live controversy existed).

Furthermore, while Texas Rule of Appellate Procedure 24.2(a)(3) provides the trial court with a "measure of discretion" in enforcing judgments pending appeal, "that discretion does not extend to denying a party any appeal whatsoever." *In re Dall. Area Rapid Transit*, 967 S.W.2d 358, 360 (Tex. 1998) (per curiam). Compliance with a judgment does not moot an appeal "if the judgment debtor clearly expresses an intent that he intends to exercise his right of appeal and appellate relief is not futile." *Miga v. Jensen*, 96 S.W.3d 207, 211–12 (Tex. 2002). Here, DCP expressed an intent to appeal before the trial court ordered it to move the pipeline. It also attempted to supersede the judgment to allow the pipeline to continue operating pending appeal. In such circumstances, the trial court's post-judgment orders should not be able to destroy a party's ability to seek appellate review of that judgment. *In re Dall. Area Rapid Transit*, 967 S.W.2d at 360.

We therefore hold DCP's relocation of the pipeline in compliance with the trial court's orders did not moot its appeal. Next, we turn to the substance of the parties' cross-motions for summary judgment.

### *Standard of Review*

We review the trial court's grant or denial of summary judgment de novo. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). To receive summary judgment, the movant must show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 468 S.W.3d 557, 565 (Tex. App.—San Antonio 2014, pet. denied). Once the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to produce evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(c). We consider the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences and resolving all doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Schuhardt*, 468 S.W.3d at 566. When reviewing a

ruling on cross-motions for summary judgment, we render the judgment the trial court should have rendered. *FM Props.*, 22 S.W.3d at 872; *Schuhardt*, 468 S.W.3d at 566.

### *Validity of Lignite Lease*

San Miguel requested—and the trial court granted—a declaratory judgment that San Miguel's rights under the lignite lease were superior to DCP's rights under the pipeline easement, and that DCP's pipeline easement was void, invalid, and/or voidable. DCP argued this claim sought to determine title to real property and, as such, was required to be brought as a trespass to try title action. DCP also argued San Miguel failed to conclusively establish that it had made the rental payments needed to continue this no-term lease.

### *Applicable Law*

Under the Texas Property Code, a "trespass to try title action is the method of determining title to lands, tenements, or other real property." TEX. PROP. CODE ANN. § 22.001(a). A trespass to try title action "is typically used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner." *See Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). The Texas Supreme Court recognizes that a trespass to try title action is the proper procedural vehicle "when the claimant is seeking to establish or obtain *the claimant's* ownership or possessory right in the land at issue." *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018). But if the plaintiff seeks a declaration regarding the defendants' authority to obstruct the plaintiffs' access to the disputed area, then the claimant may receive declaratory relief under the UDJA. *See id.* at 734–35.

The UDJA provides:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder.

TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). A declaratory judgment action "provides an efficient vehicle for parties to seek a declaration of rights under certain instruments[.]" *Martin*, 133 S.W.3d at 265. "[A] litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).

*Application*

We agree with San Miguel that it was not required to bring its claims under the trespass to try title statute because it was not seeking to establish its ownership or possessory right in the disputed land. *See Lance*, 543 S.W.3d at 736. San Miguel's primary request was to invalidate DCP's easement—it asked the trial court to construe DCP's pipeline easement, compare DCP's rights under the pipeline easement to San Miguel's rights under the lignite lease, and declare that San Miguel's rights were superior to DCP's rights. When a claimant seeks to establish the validity of an easement, the trespass to try title statute does not apply. *Id.* Many courts, including this court, have recognized the UDJA as the proper vehicle for determining the validity of an easement. *See, e.g., Roberson v. City of Austin*, 157 S.W.3d 130, 141 (Tex. App.—Austin 2005, pet. denied) (holding landowner seeking validity of sewer easement properly brought action under UDJA); *Knight v. Buckbriar, L.P.*, No. 04-01-00539-CV, 2002 WL 1285292, at *2 (Tex. App.—San Antonio June 12, 2002, no pet.) (mem. op.) (holding trial court did not abuse its discretion in awarding attorney's fees in declaratory judgment action when party sought construction of easement and rights thereunder).

Additionally, through its requests, San Miguel did not seek a determination of title—i.e., who owned an interest in a particular estate—nor did it seek to recover possession of land it alleged DCP was unlawfully withholding. *See Martin*, 133 S.W.3d at 265. This case does not involve

competing claims of ownership; instead, this case hinges on a determination of rights under a lease and easement. The UDJA, which is to be liberally construed, expressly provides for a determination of such rights under written instruments like leases and easements. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.002(b), 37.004(a). We therefore overrule DCP's argument that San Miguel was required to bring a trespass to try title action to determine whether its rights under the lignite lease were superior to DCP's pipeline easement rights.

With regard to DCP's contention that San Miguel failed to establish the validity of its lignite lease, San Miguel presented evidence of all conveyances from Clifton and Nora Wheeler to San Miguel and of the delay rental payments it made since acquiring the lease in 1978. DCP argues San Miguel failed to present evidence of the delay rental payments that were required to be made prior to 1978, and that San Miguel's own evidence demonstrates delay rental underpayments from 1986 through 2017.

The summary judgment evidence, however, explains the underpayments DCP identified to be the result of a 1986 partition agreement under which Clifton Wheeler, Jr. received a 1/3 interest in the Wheeler Tract. San Miguel's summary judgment evidence shows that Clifton Wheeler, Jr.'s delay rental payments were 1/3 of the total due for the Wheeler Tract. To support this argument below, DCP was required to present evidence that the delay rental payments due after the 1986 partition were not paid as the lease required. DCP, however, only cited its own pleadings. Pleadings are not proper summary judgment evidence. *See, e.g., Hersch v. Tatum*, 526 S.W.3d 462, 470 (Tex. 2017). For these reasons, and for the reasons described in this court's July 1, 2020 opinion in *Wheeler v. San Miguel Electrical Cooperative*, we reject those arguments. *See* 2020 WL 3547987, at *3–5. We therefore overrule DCP's challenges relating to the lease's validity.

***DCP's Condemnation Counterclaim***

Below, DCP alleged it was a common carrier with the power of condemnation. TEX. NAT. RES. CODE ANN. § 111.019(b) (authorizing a common carrier to "enter on and condemn the land, rights-of-way, easements, and property of any person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline."). After San Miguel requested injunctive relief requiring DCP to move its pipeline, DCP asserted an alternative counterclaim for condemnation under Texas Property Code sections 21.003 and 21.017. San Miguel argued the land was already dedicated to a public use, so under the paramount importance doctrine, DCP could not condemn the land for a different public use. The trial court agreed, and ultimately ordered DCP to move its pipeline.

*Applicable Law – Paramount Importance Doctrine*

Under the paramount importance doctrine, a party may prevent a condemnation by showing: (1) the property is already devoted to a public use; and (2) the condemnation would practically destroy or materially interfere with the use to which it has been devoted. *Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616–17 (Tex. 2008) (internal quotations omitted). If the proposed condemnee makes that showing, then the burden shifts to the proposed condemnor to establish that the necessity for the condemnation is "so great as to make the new enterprise of paramount importance to the public, and it cannot be practically accomplished in any other way." *Id.* at 617 (internal quotations omitted).

In addition, the Texas Supreme Court instructs that we "must look to the entire use of the affected property, and not a portion of its use, when considering practical destruction or material interference." *Id*. If the practical destruction test only applied to a part of the affected property, then "[e]very utility pole, railroad, highway, or storm drain" would practically destroy the existing public use of a small portion of the land, and a condemnee would "always shift" the burden. *Id*. at 618. "Such an application . . . would render the practical destruction inquiry superfluous." *Id*.

*Application*

Assuming without deciding San Miguel's use constitutes a public use, the summary judgment evidence exposes fact questions about whether DCP condemning the land around its pipeline would practically destroy or materially interfere with San Miguel's existing public use.[2] *Id.* at 617 (internal quotations omitted). Specifically, the summary judgment evidence shows San Miguel was not actually mining the Wheeler Tract in 2012 when DCP acquired its easement or installed the second pipeline. Instead, the evidence shows it began preparing to mine the Wheeler Tract in 1975 by expending significant amounts of money on environmental, archeological, anthropological, and aerial studies, conducting flood surveys, and drilling and extracting on the tract. And while San Miguel argues it intended to mine Area G, which is located on the Wheeler Tract, the evidence shows it did not apply for a permit to mine Area G until after DCP installed the second pipeline. On this conflicting evidence, we cannot conclude San Miguel proved that its use of the Wheeler Tract was "existing" as a matter of law.

Similarly, to defeat DCP's condemnation counterclaim, San Miguel was required to prove that DCP's condemnation of the easement would practically destroy or materially interfere with San Miguel's strip mining operations as a matter of law. San Miguel presented evidence that not being able to mine the land covered by DCP's pipeline easement would sterilize 743,919 tons of lignite. However, as summary judgment evidence, DCP presented a letter it received from San Miguel calculating that maintaining DCP's pipeline would only sterilize 550,000 tons of lignite.

Whether the sterilized amount is 550,000 tons or 743,919 tons, the parties agree that the total amount of lignite in Area G is 5,089,000 tons. We cannot conclude that sterilization of 10.8% or 14.6% of Area G practically destroys or materially interferes with San Miguel's use as a matter

---

[2] The conflicts in the summary judgment evidence make it unnecessary for us to reach the question of whether San Miguel's strip mining of lignite constitutes a public use under these circumstances. *See* TEX. R. APP. P. 47.1.

of law. *Cf. City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 66–67 (Tex. 2007) (per curiam) (closing access point to business park did not materially impair access to the park when several other access points remained). We therefore hold San Miguel failed to conclusively establish that the paramount importance doctrine prohibited DCP from condemning the land covered by its pipeline easement for a different public use. Because we are required to render the judgment the trial court should have rendered, we reverse the portion of the trial court's judgment granting San Miguel's motion for summary judgment with regard to DCP's condemnation counterclaim and vacate the portion of the trial court's judgment denying DCP's motion for summary judgment on the right to take. *See FM Props.*, 22 S.W.3d at 872.

### Attorney's Fees Under the UDJA

DCP also argues the trial court improperly awarded attorney's fees to San Miguel under the UDJA. DCP's sole argument on this point relates to San Miguel's improper characterization of a trespass to try title action as a declaratory judgment. Attorney's fees are recoverable under the UDJA; they are not recoverable under the trespass to try title statute. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 926 (Tex. 2013). Because we have concluded that San Miguel was entitled to declaratory judgments that the pipeline easement was void, invalid, and/or voidable, and that San Miguel's rights under the lignite lease are superior to DCP's rights under the pipeline easement, we would normally affirm the attorney's fee award. However, because we have also concluded the trial court erred in granting summary judgment in favor of San Miguel, we remand the issue of attorney's fees to the trial court for reconsideration as to whether this award of attorney's fees is equitable and just. *See Neeley v. W. Orange–Cove Consol. Indep. School Dist.*, 176 S.W.3d 746, 799 (Tex. 2005); *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 596 (Tex. App.—San Antonio 2017),

*aff'd*, 593 S.W.3d 324 (Tex. 2020); *Hausser v. Cuellar*, 345 S.W.3d 462, 471 (Tex. App.—San Antonio 2011, pet. denied).

CONCLUSION

Having determined that the trial court erroneously concluded DCP's condemnation counterclaim was barred by the paramount importance doctrine as a matter of law, we reverse the portion of its judgment granting San Miguel's motion for summary judgment on DCP's condemnation counterclaim, vacate the portion of its judgment denying DCP's motion for summary judgment regarding DCP's condemnation counterclaim, reverse the portion of its judgment awarding San Miguel attorney's fees, affirm the portion of the trial court's judgment granting the remainder of San Miguel's motion for summary judgment, affirm the portion of the trial court's judgment denying DCP's motion for summary judgment, and remand the cause to the trial court for further proceedings consistent with this opinion.

Beth Watkins, Justice